C. B. ENSIGN, Doing Business as C. B. ENSIGN & COMPANY, Respondent, v. CLARK BROTHERS CUTLERY COMPANY, Appellant.

Kansas City Court of Appeals, March 5, 1917.

1. **BILLS AND NOTES:** Draft: Acceptance. A telegram to another saying "will honor your draft $1500, telegram attached" is, under section 10105, R. S. 1909, making an unconditional promise in writing to accept a bill before it is drawn an actual acceptance in favor of every person who upon the face thereof receives the bill for value, an unconditional acceptance of said draft so far as the rights of such innocent purchaser are concerned. The words "telegram attached" did not make the telegram a conditional acceptance since there was nothing to indicate that the telegram referred to was any other than the one sent. And if the attaching of that telegram may be said to constitute in a sense a condition, it was not such as made it conditional where the draft was presented with the telegram attached. It was not then a conditional acceptance since it was not "dependent on the fulfillment of a condition therein stated" as required by section 10111, R. S. 1909, defining a conditional acceptance.

2. ———: ———: ———: Owner for Value: Notice. The questions whether plaintiff became the owner for value of a draft sued on, and whether he did or did not have notice of any arrangement between drawer and drawee as to any other telegram than that attached to the draft were all questions for the trier of fact to determine, and there being evidence to support them the conclusions reached thereon are binding and conclusive.

3.  ———: ———: ———: **Pleading.** Under Revised Statute 1909,
section 10122, providing for the discharge of the drawer or in-
dorsers of a bill of exchange in the absence of protest, where evi-
dence admitted without objection shows that a draft on being dis-
honored was promptly protested, the absence from the petition of a
special allegation of protest cannot affect a judgment for plaintiff.

4.  ———: ———: ———: **Liability of Acceptor: Discharge.** That
the holder of a draft took a note from the drawer and his wife for
the amount of the draft after dishonor by the acceptor of the draft
does not release the acceptor from liability, where the drawer's in-
debtedness to the holder has never been less than the face of the
draft since the date the draft was taken.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thom-
as,.* Judge.

AFFIRMED.

*E. E. Aleshire* for appellant.

*Fyke & Snider* for respondent.

TRIMBLE, J.—Plaintiff sued defendant as the ac-
ceptor, in writing, of a certain draft for $1500, payable
on demand, dated April 22, 1913, drawn by F. M. Pease
in Chicago on defendant located at Kansas City, and
transferred for value to plaintiff. The case was tried
by the court, a jury being waived. The court made a
finding of facts and rendered judgment for plaintiff for
the full amount represented by the draft with interest.
Defendant has appealed.

On April 22, 1913, the defendant at Kansas City sent
the following telegram to F. M. Pease at Chicago:

"Will honor your draft fifteen hundred dollars tele-
gram attached.        CLARK BROS. CUTLERY CO."

Thereupon, Pease drew the following draft:

"$1500.                        Chicago, Apl. 22, 1913.

On demand pay to the order of F. M. Pease Fifteen
Hundred Dollars, value received and charge the same
to account of Clark Bros. Cutlery Co., 628 Broadway,
Kansas City, Mo.

F. M. PEASE."

and, with the above telegram attached thereto, endorsed
and delivered it to plaintiff and received from the latter
the money thereon. Plaintiff, in due course and through
the proper channels, sent the draft to defendant, but the
latter declined to pay it, whereupon it was duly pro-
tested.

According to defendant's testimony, Pease, prior to
April 22, 1913, had been employed and engaged in the
endeavor to consolidate, and effect the purchase of, cer-
tain properties or factories at Watertown, Conn., though
up to April 22, 1913, nothing definite had been accom-
plished in that direction. Defendant's further testimony
was that on said date Pease told defendant over the long
distance telephone from Chicago that he had received a
telegram from Watertown, Conn., giving Clark Bros.
Cutlery Co. an option on the purchase and consolidation
of the factories and that it would require $1500 to pay
for the option in addition to what Pease had put up or
provided, and requested defendant to honor his draft for
that amount; that the defendant agreed to do so if
Pease would attach the Watertown, Conn., telegram to
the draft so that defendant would be assured that Pease
had some tangible agreement from the Watertown par-
ties; that shortly after such telephone conversation,
and on the same morning, Pease sent a telegram to de-
fendant asking him to wire authority to draw as he per-
haps could not get the draft cashed in Chicago without
such authority; that thereupon defendant sent the above
quoted telegram. Defendant contends that in the tele-
gram agreeing to accept draft for $1500, the telegram
therein referred to and required to be attached was the
Watertown telegram and was so meant by defendant and
understood by both it and Pease; that when the draft
was presented and defendant saw that its telegram and
not the Watertown telegram was attached, it refused to
pay the draft.

Plaintiff's evidence was, and the court in its find-
ings of fact so found, that the draft with the telegram
attached was delivered to plaintiff on April 22, 1913, and
the latter then became the owner thereof for value and

has ever since been the owner thereof, and that at the tim it was transferred to him, plaintiff had no notice nor knowledge of any arrangement between the drawer and drawee of said draft not expressed in said draft and attached telegram, nor of any other telegram having any relation to or bearing upon the subject, and that plaintiff did not take said draft possessed or charged with any such notice or knowledge.

According to Pease's testimony there was no agreement over the telephone with defendant that he should attach any telegram from Watertown to the draft. His testimony is to the effect that the agreement of defendant to accept his draft was an independent agreement between them and that he depended on the telegram he received from defendant, as did plaintiff. The finding of facts makes no *explicit* finding as to whether or not the defendant meant any other telegram than the one that it sent and which was attached to the ·draft. It makes no specific declaration on that feature, and makes no finding in regard thereto any more than what may be implied in the finding that plaintiff had no notice nor knowledge of any such arrangement or situation. For all practical purposes, however, it may be assumed that there may have been some such agreement between defendant and Pease and that the telegram meant, in the telegram agreeing to accept, was a telegram from Watertown; and the case will be disposed of on the theory that such may have been the case.

The questions, whether plaintiff became the owner, for value, of the draft, and whether he had or did not have notice of any arrangement between Pease and defendant as to any other telegram, or that any telegram, other than the one attached, was meant in the telegram of acceptance, were all questions for the trier of fact to determine, and his conclusion thereon is binding. Indeed, there is no evidence to the contrary, on the questions of plaintiff having given full value for the draft and that he was without notice of anything wrong in reference to the telegram referred to. So that, unless defendant's telegram of acceptance must be held to be a

*conditional* acceptance, plaintiff is entitled to recover under the findings of the court, which also include a finding that at no time since April 22, 1913, has Peace's indebtedness to plaintiff been less than $1500.

Of course, if the defendant's telegram is a conditional acceptance, then plaintiff cannot recover unless he shows he complied with the condition. [Ford v. Angelrodt, 37 Mo. 50.] Section 10,105, Revised Statutes 1909, says:

"An unconditional promise in writing to accept a bill before it is drawn is deemed an actual acceptance in favor of every person who, upon the face thereof, receives the bill for value."

The vital question in the case, therefore, is whether said telegram is an *unconditional* acceptance. We think it was. When the draft with the telegram attached was delivered to plaintiff, where was any condition expressed upon which defendant's acceptance depended? The draft was accompanied by defendant's out-and-out promise to accept a draft of that precise amount and drawn by Pease. The words "telegram attached," in the acceptance, conveyed no intimation that any telegram other than the one sent was meant. These words did not create a condition of acceptance, but were merely a *means of identification* of the particular draft made pursuant to the acceptance. The attaching of the telegram would perhaps accomplish the further purpose of returning it to the acceptor so that its acceptance would not be out upon which other drafts could be drawn after exceptor had paid one. If this may be said to constitute, in a sense, a condition of acceptance, it is not such, within the meaning of the statute, as prevents the acceptance from being unconditional, so far as the plaintiff is concerned when he took the draft with the telegram attached. Payment by the acceptor was not "dependent on the fulfillment of a condition therein stated" as is required in the statutory definition of a conditional acceptance. [Sec. 10,111, R. S. 1909.]

The evidence shows that the draft, upon being dishonored, was promptly protested, and this evidence was

admitted without objection, and the absence from the petition of a specific allegation of protest cannot affect the judgment. The petition alleged that payment of the draft was demanded of defendant on the 24th of April, 1913, and payment refused. Defendant's evidence showed that due presentment of the draft, and demand for payment, was made, and that it was formally done by a notary. Since the suit is against defendant upon its written acceptance of the draft, it is somewhat difficult to see what figure protest, after presentment and demand, would cut. There are no rights of drawer or endorsers involved, which would be discharged in the absence of protest, as provided by section 10,122.

After payment on the draft was refused, plaintiff took a note from Pease for $1500 with his wife thereon, to secure Pease's liability as an endorser of the draft in question. We are unable to see how the taking of such a note released defendant of its liability to plaintiff on the acceptance. Pease's liability as an endorser was secondary, that is, he was not required to repay plaintiff anything on account of the endorsement of the draft unless defendant finally failed to pay it. Or, to state it the other way, plaintiff was not compelled to look first to Pease for his money on the draft instead of to defendant. He could look to the latter first. There is no evidence that Pease has repaid plaintiff the money he was out on the draft. And there is evidence, and the court so found, that Pease's indebtedness to plaintiff has never been less than $1500 since the date the draft was taken. Since plaintiff had the right to, and did, treat defendant's obligation on the acceptance as primary, the question of plaintiff's other transactions was not material, though the court (trying the case without a jury), admitted testimony as to them in order perhaps to understand and get at the whole story. There is also evidence that Pease has not been in a position to pay his obligatons since the draft was made. If Pease, by wrongfully substituting a different telegram from the one intended, obtained money which defendant has to pay and to which Pease was not entitled, then Pease may be liable to de-

fendant therefor, but defendant, having accepted the draft and having induced plaintiff to advance his money on the strength of that acceptance, cannot compel plaintiff to look to Pease as his primary debtor in the draft transaction.

Finding no error in the case, at least none that can be remedied by an appellate court, the judgment must be affirmed. It is so ordered. All concur.