JOHN C. CARTER, Administrator of Estate of DEL-MAR RIDGEWAY, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

In Banc, June 28, 1918.

1. **LIFE INSURANCE: Misrepresentation Statute: Simulated Applicant.** The statute (Sec. 6937, R. S. 1909) declaring that "no representation made in obtaining or securing a policy of insurance on the life" of any citizen of this State "shall be deemed material. or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due or payable," does not apply to a policy procured by one simulating the applicant. The statute was designed to lessen fraud, not to increase it.

2. ———: ———: ———: **Interpretation.** The words of the statute limit the misrepresentations (1) to those expressed in the application "made in obtaining and securing" a valid policy, and (2) to matters which "actually contributed" to the insured's death. It does not render immaterial a concealed condition which, had it been made known at the time of the applicant's examination, would have precluded the issuance of the policy.

3. ———: **Fraudulent Contract.** A policy of life insurance, issued upon an application made by one who personated the applicant. having been conceived in fraud, may, for that reason, in an action on the policy, be shown to be fraudulent and therefore invalid.

4. ———: ———: **Pleading: General Denial.** If nothing appears on the face of the petition to disclose the fraud on which the insurance contract was founded, and said contract is susceptible of formal proof without a showing as to its legality, the defense that no legal contract was made is not available under a general denial, but, to be available, the facts constituting its invalidity must be pleaded.

5. ———: ———: ———: **Joinder of General Denial With Special Defenses.** The joinder of a general denial, separately stated, with a special answer and cross-bill is expressly authorized by statute.

6. ———: ———: ———: **Cancellation: Conversion Into Equity.** If the special answer and cross-bill aver with sufficient certainty the invalidity of the contract sued on, and the cross-bill, after stating proper grounds for affirmative relief, contains a prayer for the cancellation of the contract, the action at law is thereby converted into one in equity, and the case is to be heard by the court and not by a jury.

APPEAL from St. Louis City Circuit Court.—*Hon. Kent K. Koerner*, Judge.

REVERSED AND REMANDED (*with directions.*)

*Fordyce, Holliday & White* for appellant; *William J. Tully*, of counsel.

(1) The court erred in sustaining plaintiff's demurrer to defendant's cross-bill. The averments of the cross-bill stated a cause of action in equity, based upon the fraudulent conduct of the plaintiff, and, if true, established conclusively that no valid contract of insurance had ever been entered into and that the policy on which plaintiff was suing should be canceled. Barrington v. Ryan, 88 Mo. App. 95; Whitmore v. Supreme Lodge, 100 Mo. 46; Pacific Mutual .v. Glaser, 245 Mo. 390; Gardner v. North State Co., 163 N. C. 307; Southern States Co. v. Herlihy, 128 S. W. 94; Mutual Life v. Pearson, 114 Fed. 395; Bacon, Life & Accident Insurance (4 Ed.), sec. 194; 1 Joyce on Insurance (2 Ed.), secs. 99, 43-45; Schuermann v. Ins. Co., 165 Mo. 649; Keller v. Insurance Co., 198 Mo. 455; 9 Cyc. 401. (2) The court erred in overruling the' defendant's objection to trial by jury. Sec. 1807, R. S. 1909; Wendover v. Baker, 121 Mo. 273; Myers v. Schuchmann, 182 Mo. 159. (3) The court erred in ruling that the defendant under its general denial, was not entitled to introduce evidence to prove that no contract of insurance was ever entered into between Delmar Ridgeway and the defendant. Greenway v. James, 34 Mo. 328; Cavender v. Waddingham, 2 Mo. App. 551; Wilkerson v. Farnham, 82 Mo. 672.; Clemens v. Knox, 31 Mo. App. 185; White v. Middlesworth, 42 Mo. App. 373; Chapman v. Currie, 51 Mo. App. 40; Hellmuth v. Benoist, 144 Mo. App. 698; Southern States Co. v. Herlihy, 128 S. W. 94; Johnson v. Insurance Co., 181 Mo. App. 443; Young v. Glascock, 79 Mo. 576; Sprague v. Rooney, 104 Mo. 360.

*Frederick H. Bacon* for respondent.

(1) Before a loss, but not afterwards, an insurance company can bring an action in equity to cancel a policy alleged to have been obtained by fraud. After the death, however, no such right exists because the fraud, if any, can be pleaded as a defense, provided the facts bring it within the provisions of our statute as to misrepresentations made in obtaining a policy of life insurance; consequently the defendant in such case has a complete and perfect remedy at law. Schuermann v. Union Central Life Ins. Co., 165 Mo. 652; Kern v. American Legion of Honor, 167 Mo. 471-488; Pacific Mutual Life Ins. Co. v. Glaser, 245 Mo. 377; Insurance Co. v. Cullen, 237 Mo. 557; Keller v. Home Life Ins. Co., 198 Mo. 440-453; Lynch v. Prudential Ins. Co., 150 Mo. App. 461; Cable v. U. S. Life Ins. Co., 191 U. S. 288; Riggs v. Union Life Ins. Co., 63 C. C. C. 365, 129 Fed. 207; Griesa v. Mutual Life Ins. Co., 94 C. C. A. 635, 109 Fed. 509. (2) The sustaining of the demurrer to the cross-petition of appellant was practically a judgment. The cross-petition is really a new suit and when a demurrer is sustained to the cross-petition the same result follows as if a demurrer had been sustained to a petition, and the defendant must either abandon his cross-petition, leaving judgment to be rendered on the demurrer, or file an amended cross-petition. The matter which was demurred to as an answer and cross-petition can no longer be considered, nor can it be considered as an answer to the allegations of the petition. If defendant wishes to avail himself of them he must file an answer setting up the facts, because the sustaining of the demurrer eliminates the allegations of the cross-petition. Sec. 1811, R. S. 1909; Cardwell v. Stuart, 92 Mo. App. 586. (3) After the demurrer to the cross-petition was sustained, the only pleading of the defendant remaining was the general denial. If the defendant claimed that the issuance of the policy was obtained by fraud, the facts must be specially pleaded. Kern v.

Legion of Honor, 167 Mo. 471; Welsh v. Ins. Co., 165 Mo. App. 233; Aloe v. Life Assn., 164 Mo. 675; Jenkins v. Ins. Co., 171 Mo. 383; Keller v. Ins. Co., 198 Mo. 440; Kelerher v. Henderson, 203 Mo. 498-511; State ex rel. v. Kennedy, 163 Mo. 518; 2 Cooley's Briefs, 1176; Hilburn v. Ins. Co., 140 Mo. App. 365; Burgess v. Ins. Co., 114 Mo. App. 189.

WALKER, J.—This is an action brought by plaintiff as administrator on a life insurance policy, alleged to have been issued by defendant to one Delmar Ridgeway. Upon the sustaining of a demurrer to defendant's answer, except as to its general denial, and its refusal to plead further, the plaintiff made formal proof and the court directed a verdict in his favor in the amount of the policy. From this judgment the defendant appeals.

The petition contains all the formal averments necessary to a pleading of this character.

The answer consists, first, of a general denial; second, a special defense, and cross-bill, that the policy was caused to be issued on the application of a person who falsely represented himself to be Delmar Ridgeway, and that defendant issued said policy relying upon such false and fraudulent representation; that the person who represented himself to be Delmar Ridgeway, and who signed the application for the policy, was not in fact Delmar Ridgeway, but fraudulently imposed upon the defendant in thus falsely representing himself in the procurement of said policy.

That the plaintiff, with intent to defraud the defendant, caused the alleged Delmar Ridgeway to apply for the policy and to undergo the required medical examination therefor, and furnished the money to pay the premium on the policy; that plaintiff fraudulently caused the alleged Delmar Ridgeway to execute a will purporting to be the will of Delmar Ridgeway, bequeathing the policy to the plaintiff. That five months after the issuance of the policy, Delmar Ridgeway died and plaintiff made application for and

was appointed administrator, with the will annexed, of the estate of the deceased.

For a further special defense and cross-bill, after pleading the foregoing affirmative defenses, defendant alleges that the application for insurance herein was not made in good faith by the alleged Delmar Ridgeway, for the beneficiary named in the policy, but was made at the instigation and request of the plaintiff for his own use and benefit. That plaintiff paid the first semi-annual premium on the policy, and caused the alleged Delmar Ridgeway to execute a will bequeathing the policy to the plaintiff. That the policy never was delivered to the alleged Delmar Ridgeway, but possession of same was fraudulently kept and maintained by the plaintiff, and the plaintiff had no insurable interest in the life of the insured.

This is followed by a prayer for specific relief in that the policy be canceled, and for naught held, and that defendant be hence dismissed with its costs and for such other and further relief as to the court may seem proper.

Plaintiff's demurrer to the first and second counts of the answer, stated separately, was that neither constituted a defense to the petition, and if the facts stated therein were true, they showed that defendant had a full and complete remedy at law.

The case coming on for hearing, after the sustaining of the demurrer, as aforesaid, the plaintiff made formal proof of the issuance of the policy, the payment of the premium, the death of deceased, the probating of the will of the latter, and the appointment of plaintiff as administrator. The defendant offered proof to sustain its general denial, and in support of its several special defenses, all of which testimony was excluded.

The matter having been heard before a jury, the court, at the instance of the plaintiff, gave the following peremptory instruction:

"The court instructs the jury that under the pleadings and evidence in this case the plaintiff is en-

titled to recover on the policy sued on in the 'sum of five hundred dollars, less an unpaid semi-annual premium of $10.91, with interest on the balance from the time of the filing this suit, at the rate of six per cent.''

Defendant asked the following instructions, which were refused:

''The court instructs the jury that if you believe and find from the evidence that the application for the policy in this suit was not signed by Delmar Ridgeway, but, on the contrary, was signed by some other person, falsely and fraudulently representing himself to be Delmar Ridgeway, and that this fact was not known to the defendant, then your verdict must be in favor of the defendant.

''The court instructs the jury that if you believe and find from the evidence that the plaintiff John C. Carter caused an application to be made for a policy of insurance purporting to be upon the life of one Delmar Ridgeway and that the plaintiff caused an alleged Delmar Ridgeway to execute a last will and testament leaving the proceeds of said policy to the plaintiff and that the plaintiff was not a relative of said Delmar Ridgeway or dependent upon said Delmar Ridgeway or a creditor of said Delmar Ridgeway and had no insurable interest in the life of said Delmar Ridgeway, then your verdict must be in favor of defendant.''

The jury found in favor of the plaintiff, as directed by the court. From this verdict, after the overruling of its motion for a new trial, defendant appealed.

I.    Primarily, the determination of the issue involved is dependent upon the construction of Section 6937, Revised Statutes 1909, which pro-

Simulated Applicant.    vides: ''No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and

whether it so contributed in any case shall be a question for the jury.''

Plaintiff contends, and the trial court so held, that this section applies not only to policies procured through misrepresentations made by the applicant for insurance, but as well to those procured by one simulating the applicant. This is a rather startling proposition, and if the statute be so construed, its effect will be to render an insurance contract immune from a plea of invalidity for fraud, although obtained through false pretenses made by another than the insured, and without his knowledge. No amplification of words is necessary to the conclusion that such a construction, instead of lessening the possibility of fraud, as was evidently intended by the enactment of the section, will tend rather to promote the same. Aside, however, from this general conclusion, amply sustained by the rules of interpretation, a consideration of the nature of life insurance contracts and the conditions under which they are uniformly executed, will aid in determining the meaning, purpose, and consequent limitation of the section.

An examination of the applicant is a condition precedent to the issuance of a life insurance policy. From its terms, it is evident that this section was intended to be limited to the facts elicited in this examination in its providing that the misrepresentations referred to shall be those ''made in obtaining or securing'' the policy. The limitation is express, and under the rule embodied in the maxim of *expressio unius*, etc., other misrepresentations outside of or independent of such examination and which may affect the validity of the policy are excluded.

Viewed from another vantage the propriety of the restricted application of the section becomes apparent. It is in the nature of a limitation. As such, it can have no operative force unless there exists a policy otherwise valid upon which it can operate. An invalid policy has no legal existence and can form no basis for the operation of a limitation. As applied to the case at bar, it fol-

lows that before the section can be invoked to limit the effect of whatever misrepresentations may be pleaded as a defense to an action on the policy, the latter must be conceded to be otherwise valid. The result of this concession leaves nothing which can appropriately be interposed by the plaintiff in invoking the section, except such misrepresentations as may be charged to have been made by the insured in obtaining the policy; these, as we have shown, must be such as were made by him in his examination for the same.

Furthermore, the words employed in defining the materiality of the misrepresentations referred to in the section, are, in themselves, sufficiently definite to enable the character of such misrepresentations to be determined. The section prescribes that only such misrepresentations are material as contribute to the death of the insured; one which so contributes must be such an one, which, if it had not been made, the policy would not have been issued. To illustrate, the applicant answers falsely in regard to never having had a certain disease and that he is then in sound health. He dies soon thereafter of this disease. If he had answered truly, the issuance of the policy would have been precluded. False answers to any other material inquiries would have had a like effect in that they would have rendered the applicant an uninsurable risk. This but tends to emphasize the fact that the right of the insured to the policy is determined by his examination, and to such mispresentations, therefore, as are made therein, the section must necessarily have reference. What is meant by the section, in other words, is that no false statement made in the application for the policy shall avoid the same unless such statement concealed a condition which contributed to the death of the insured.

Otherwise construed, the validity of the policy in other respects is left out of consideration. No limit, except as indicated in defining their materiality, is to be placed upon any representations made in securing the policy; and, although they may involve the grossest

and most despicable fraud, viz., the impersonation of another for the purpose of profiting by his death, and be independent and outside of the purported examination of the insured, the insurer is to be precluded from interposing them in defense to an action on the policy, unless it be alleged that they contributed to the death of the insured.

Such a construction is not in accord with a reasonable interpretation of the words employed. Its effect in the administration of the law of insurance under our statute would be to foster fraud. It outrages a righteous sense of justice and is, therefore, foreign to the intention of the Legislature in the enactment of the section. Given the restricted construction we have indicated, however, it serves a useful and practical purpose in placing a reasonable limit upon the effect of misrepresentations the interposition of which has been deferred until the insured is dead.

The construction of the section under the facts in issue is one of first impression in this State. Our reports are replete with cases discussing and determining the effect of various forms of misrepresentations in obtaining policies, but these are found to be limited to misrepresentations made by the applicants themselves and not by others.

The Supreme Court of Kentucky, in ruling upon a case (So. States Mutual Life Ins. Co. v. Herlihy, 138 Ky. 359, 128 S. W. 91) involving the defense made here of false personation of the insured in procuring the policy, says, in effect, that "although the company could not defeat a recovery upon the ground that the insured in the application made false and material answers, this did not deprive it of the right to show that the insured was not the person who made application for the insurance and who was, in fact examined; or that the insurance was procured as a part of a conspiracy between the insured and others who had no insurable interest in her life for the purpose of practicing a fraud upon the company. These defenses were based upon facts existing independent of the matter

contained in the application.   The failure to comply
with the statute in pleading the application, denied the
company the right to resist the payment of the policies
upon defenses arising out of the application.   It did not
prevent it from showing that in matters outside of
the application the policies had been avoided.    If
a person other than the insured made the application
and was examined, there was, of course, no contract
between the company and the insured.   And so, if the
insurance was obtained as a part of a conspiracy en-
tered into by persons having no insurable interest in
the life of the insured, the contract was illegal, against
public policy and non-enforceable.   These two defenses
the company made, and the lower court properly per-
mitted wide latitude in the examination of witnesses
whose evidence tended to support them.''

   This case is apposite here because the rule an-
nounced therein, expressed in general terms, is ex-
ceedingly elementary and applicable alike to all obli-
gations.  It is that a contract conceived in fraud has no
legal existence and that this fact may be shown to de-
feat an action brought thereon (Pac. Mut. Life Ins.
Co. v. Glaser, 245 Mo. l. c. 390).   Thus, it appears,
aside from the inapplicability of Section 6937, supra, that
the defense sought to be made by the defendant in its
special answer and cross-bill, that no contract had
ever been made between it and the insured, should have
been permitted.   The trial court therefore erred in
sustaining the plaintiff's demurrer.

   II.  The defense was based upon the theory that
the contract was illegal in that no real agreement had
ever been entered into by the parties.  If this fact be
established, then the contention of the defend-
**General Denial.** ant may be sustained upon a broader principle
than the determination of its rights, viz., that
of public policy.   But is this defense available under
a general denial?   Under our system of pleading a
general denial raises an issue as to each of the material
allegations of the petition.   [Sells v. Railroad, 266 Mo.

l. c. 177; Kelerher v. Henderson, 203 Mo. l. c. 511.] In a certain class of cases, usually involving the right to the possession of property, and which do not distinguish between a general denial and the general issue, it is held that the defendant may prove any fact which goes to show that the plaintiff never had any cause of action. A compilation of this class of cases is to be found in Patton v. Fox, 169 Mo. l. c. 106.

It was held in Sprague v. Rooney, 104 Mo. l. c. 360, that the effect of a general denial is to deny the legality of a contract sought to be enforced, and to authorize the admission of evidence, to show that the same, although on its face valid, was intended to accomplish an illegal object. This case was expressly overruled in McDearmott v. Sedgwick, 140 Mo. l. c. 182, in which the following ruling was announced: Where there is nothing on the face of the petition to indicate other than a valid contract, if it is to be invalidated by some extrinsic matter, such matter must be pleaded. This ruling is in harmony with the current of anthority, not only in the earlier, but the later cases as well. [School Dist. v. Sheidley, 138 Mo. l. c. 690; Bell v. Warehouse Co., 205 Mo. l. c. 493; Shohoney v. Railroad, 231 Mo. l. c. 147.]

Nothing appearing on the face of the petition to disclose the fraud on which the contract was founded, and the same being susceptible of formal proof without a showing as to its legality, the defense of its legal non-existence was not available under a general denial.

III. The joinder of the general denial, separately stated, with that of the special answer and cross-bill is expressly authorized by statute [Sec. 1807, R. S. 1909; State ex rel. v. Rogers, 79 Mo. 283; Cohn v. Lehman, 93 Mo. 574.]

Special Defenses.

The special answer and cross-bill alleged with sufficient certainty the grounds of the defense and the reasons for the affirmative relief prayed for. The latter consisted in a prayer for a decree canceling the

State ex rel. v. Clark.

policy. This changed the action at law into one in equity and the case should have been heard by the court and not by a jury. [Myers v. Schuchmann, 182 Mo. 159; Wendover v. Baker, 121 Mo. 273.]

For the reasons stated, this case should be reversed and remanded, to be proceeded with as herein indicated.

It is so ordered. All concur, except *Blair J.,* not sitting.