WALLACE STATE BANK, A CORPORATION, APPELLANT, v. CORN EX-
CHANGE BANK, A CORPORATION, RESPONDENT.*

Kansas City Court of Appeals. February 1, 1926.

1.—Bills and Notes—Where Acceptance of Draft Conditional, Plaintiff
Could Not Recover Unless Conditions Were Complied With.  Where ac-
ceptance of draft was conditional, plaintiff could not recover unless con-
ditions were complied with.

2.—Same.—Terms of Conditional Acceptance Must be Complied With.  Tele-
gram of acceptance honoring drafts for carload of pigs at eight and
quarter cents, held conditional on shipment complying with terms thereof.

3.—Same—Evidence Held to Show Acceptance Was Conditional.  Evidence
held to justify conclusion that plaintiff regarded acceptance as conditional.

4.—Same—Bank Paying Draft on Misleading Statement of Drawer That
Shipment Complied With Terms of Acceptance Could Not Recover From
Conditional Acceptor, Where Drawer Was Not His Agent.  If bank in pay-
ing draft relied on drawer's statement that shipment was made in accord-
ance with defendant's telegram of acceptance and was thereby misled, it
cannot recover from bank accepting draft on condition that shipment com-
plied with terms of acceptance, where drawer was not agent of acceptor.

5.—Same—Plaintiff Could Not Recover on Theory Cause Not Brought or
Tried On.  Plaintiff could not recover amount of draft paid by it on a com-
mon-law action for breach of promise to accept draft where cause was neither
brought nor tried upon that theory.

6.—Same—Pleading—Question Whether Acceptance Was Conditional or
Not Held Properly Raised by General Denial.  Where petition alleged plain-
tiff presented draft to defendant for payment in accordance with acceptance,
question as to whether acceptance was conditional or unconditional was
properly raised by general denial.

7.—Evidence—Customs and Usages—Testimony as to Meaning of "Pigs"
Held Evidentiary and Admissible Without Being Pleaded, Though Tending
to Establish a Custom.  Testimony that "pigs" at stock market meant
young swine weighing from 75 to 120 pounds, was merely evidentiary and
admissible without being pleaded, though tending to establish a custom.

8.—Bills and Notes—Telegram of Acceptance of Draft Regarded as Part
of Defendant's Contract Same as if Provisions Were Endorsed on Draft.
Telegram of acceptance of draft regarded as part of defendant's contract
of acceptance, same as if its provisions were endorsed upon draft. itself.

9.—New Trial—If New Trial Can be Sustained Upon Any Reasonable
Ground, It Should be Done.  If trial court's ruling granting a new trial may
be sustained upon any reasonable ground, it should be done.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 662, n. 82, 91;
Bills and Notes, 8CJ, p. 305, n. 24; p. 325, n. 21 New; p. 327, n. 48; p. 328,
n. 53 New; p. 910, n. 46 New; p. 968, n. 38; p. 1045, n. 92; Customs and
Usages, 17CJ, p. 518, n. 3.

Appeal from the Circuit Court of Jackson County.—Hon. Thomas
B. Buckner, Judge.

AFFIRMED.

*R. V. Nelson* and *W. D. Bush* for appellant.

*Hunt C. Moore, H. A. Ault, John T. Wayland* and *Illus M. Lee* for respondent.

ARNOLD, J.—This is an action to recover the sum of $1516.73, the amount of a sight draft drawn by one L. W. Orr upon the firm of Black & Atkinson of Kansas City, Missouri, payable to the Wallace State Bank of Monte Vista, Colorado, through the Corn Exchange Bank of Kansas City, Mo. The cause was tried to the court without the aid of a jury and resulted in a verdict and judgment in favor of plaintiff for the sum of $1635.74. A motion for a new trial was sustained by the court without any reason therefor being assigned and from that ruling plaintiff appeals.

The record shows the facts to be that the Wallace State Bank, plaintiff herein, was a banking corporation doing business at Monte Vista, Colo.; that on or about the —— day of June, 1921, Ralph L. Stitt, active vice president of said bank, was approached by one L. V. Orr who stated he was purchasing a carload of pigs for Black & Atkinson of Kansas City, Mo., and asked Mr. Stitt to honor a draft for the value of the pigs. Mr. Stitt agreed to honor the draft and pay Orr the proceeds thereof if Orr would procure the acceptance of the draft by a Kansas City bank representing Black & Atkinson. On June 18, 1921, the Wallace State Bank received a telegram from the Corn Exchange Bank of Kansas City, Mo., the defendant herein, as follows:

"14 D A 22   Received at Monte Vista Colorado
                              FY   Kansas City Mo
"138 PM   June 18   21
"Wallace State Bank Monte Vista Colo
"We will honor draft drawn by L V Orr on Black & Atkinson for carload of pigs at eight and quarter cents
                    "Corn Exchange Bank   128 PM"

After receipt of said telegram Orr presented to Mr. Stitt certain waybills which he claimed showed the weight of the pigs for the purchase price of which the draft was to be drawn, at the price named in the telegram of acceptance. The draft for $1516.73 was drawn and immediately forwarded to the National Bank of Commerce at Kansas City, Mo., for presentation to the Corn Exchange Bank, and the money was paid by plaintiff to Orr. The Corn Exchange Bank refused payment of the draft and it was duly protested, the protest fee amounting to $2.50. This suit followed.

The petition alleges the facts substantially as stated above and plaintiff offered proof tending to support the allegations. The answer was a general denial.

It is charged that the trial court erred in sustaining defendant's motion for a new trial. Plaintiff contends the telegram is an unconditional acceptance, while defendant contends that its telegraphic acceptance of the draft was qualified and conditional and that said, conditions were not met. The ground for defendant's refusal to pay the draft was that the drawer thereof shipped a carload of hogs averaging 160 pounds, while the telegram of acceptance stipulated "pigs" which defendant claims is a term understood on the market and generally, as meaning young swine weighing not less than 75 pounds nor more than 120 to 135 pounds as the limit.

Defendant offered proof which, by agreement, was considered the evidence of H. C. Black of the firm of Atkinson & Black, for whom the purchase was made. This witness identified telegrams exchanged between Black and Orr relative to the purchase and shipment of the pigs. These telegrams disclose that the stock in question was shipped to Grover, Kans., and that the party to whom the car was consigned refused to accept the shipment because it was a load of fat hogs averaging about 160 pounds, instead of being a load of pigs as stipulated in the telegram of acceptance.

The testimony of this witness was to the effect that the term "pigs" as shown on the live stock market, means a weight averaging 75 to 120 pounds, and not to exceed 135; that swine next above this weight are known as "shoats" and when full grown as "hogs;" that "pigs" as known to the trade are more valuable than hogs, per pound; that the shipment in question was sold to the best advantage, the net proceeds thereof amounting to $1136.04, which amount was remitted to plaintiff and acceptance thereof refused; that the consignee at Grover, Kans., knew the animals to be fat hogs and gave that as his reason for refusing to accept them when he had ordered pigs.

As we view the case, the determination of this appeal is based upon the proper construction of the telegram of acceptance. If it is found that the telegram of acceptance is unconditional, then plaintiff's position is correct and plaintiff should recover. On the other hand, if the acceptance, in fact, was conditional, then plaintiff cannot recover unless it can be shown that the conditions thereof have been complied with; Ensign v. Cutlery Co., 195 Mo. App. 584; Ford v. Angelrodt, 37 Mo. 50. The wording of the telegram of acceptance must determine the question as to whether it is an unconditional acceptance or not. Quoting therefrom the words "Will honor draft drawn by L. V. Orr on Black & Atkinson for carload of pigs at eight and quarter cents," we think it impossible to construe this as an un-

conditional acceptance. Beyond question, the telegram limits the acceptance to (1) one carload, (2) pigs and (3) at 8¼ cents. It is not contended that the shipment did not comply with the acceptance in two respects, to-wit, one carload and 8¼ cents. This legal controversy, then, is waged around the construction to be placed on the word "pigs." Plaintiff contends that the word "pigs" embraces the term "hogs" and that the shipment of animals averaging 160 pounds was a compliance with the conditions of the acceptance.

Defendant offered in proof certain telegrams that passed between Orr and the firm of Black & Atkinson relative to the kind of pigs desired for the shipment and that Orr so understood the agreement. Note telegram from Orr to Black, June 13, 1921:

"Extreme hundred to hundred-thirty-five average probably hundred twenty-first quality vaccinate last of April."

. And on June 17, 1921, Black replied by telegram as follows:

"Will pay seven and half for load ninety to hundred and eight and quarter for immune load have one load sold so answer what you will do and when can ship."

These telegrams were admitted in evidence over the objection of plaintiff. Defendant also offered to show by witness Black that the extreme range in weight for "pigs" on the market is about 75 to 120 pounds; that over that weight they are called "shoats" and "hogs;" that a contract for a carload of pigs is not the same as a contract for a carload of hogs. This testimony was admitted in evidence by the court, subject to the objection of plaintiff. Defendant also offered to show by this witness that the distinction between pigs and hogs maintained at the Kansas City market applies also at Monte Vista, Colo., but this offer was refused by the court.

The testimony of Mr. Stitt seems to indicate that, as agent of plaintiff, he was familiar with the negotiations between Orr and the firm of Black & Atkinson, as set out in the telegrams above quoted, in connection with the telegram of acceptance. Note his testimony on this point:

"Q. Now, Mr. Stitt, what negotiations had you had with L. V. Orr, the drawer of the draft this telegram purported to have accepted? A. Mr. Orr had advised us of his action in purchasing these pigs, asking what we would require to make payment on his draft.

"Q. Whom did he claim to you he bought the pigs for? A. For a firm in Kansas City by the name of Black & Atkinson.

"Q. Did he ask you to accept the draft drawn on Black & Atkinson for the purchase price of these pigs—tell the court what negotiations you had with him in that regard? A. We advised Mr. Orr the drawer of the draft, that we would require telegraphic acceptance of the draft by the Kansas City banker representing the firm for whom he was buying."

From Mr. Stitt's testimony the trial court, sitting as a jury, was justified in concluding that plaintiff regarded the acceptance as conditional. Stitt testified that he inquired of Orr "if the draft was to be drawn in accordance with this agreement," referring, of course, to the telegram of acceptance. Witness stated that he did not know whether pigs, hogs or some other stock, in fact, was shipped, but that he had accepted Orr's statement that the shipment was in accordance with the telegram of acceptance.

There is no showing that Orr was defendant's agent and no claim was made to that effect. It must be held that if plaintiff relied upon Orr's statement to the effect that the shipment was made in accordance with the telegram of acceptance and was thereby misled, defendant may not be held to account. It is argued that plaintiff should be permitted to recover on a common-law action for breach of promise to accept the draft.

We think this position is without merit for the very sufficient reason that the cause was neither brought nor tried upon that theory. Discussion of that point is therefore unnecessary. The question as to whether the acceptance was conditional or unconditional was properly raised by general denial. [Carter v. Ins. Co., 275 Mo. 84, 204 S. W. 399; Sells v. Railroad, 266 Mo. 155, 181 S. W. 106; Ornburn v. Haley, 225 S. W. 114; McGinness v. Railway Co., 195 Mo. App. 390, 192 S. W. 115.] In the last case cited, l. c. 396, the court held:

"It is common learning that a general denial puts in issue all material matters constituting a cause of action—'all allegations necessary to the support of the plaintiff's case.'"

The petition alleges that plaintiff presented the draft " . . . to defendant for payment in accordance with said acceptance," and further states that plaintiff, after protesting the draft, "made demand for payment of said draft in accordance with defendant's telegram to this plaintiff." Defendant's position is that the draft was not presented for payment in accordance with the telegram of acceptance, as alleged in the petition, so that the issue is squarely made.

Plaintiff contends that the testimony of the witness Black to the effect that "pigs" at the stock market mean young swine weighing from 75 to 120 pounds, tended to establish a custom and was inadmissible because not pleaded in the answer. It appears the testimony in question was merely evidentiary, and, under our holding in Piper v. Allen, 219 S. W. 98, it was admissible without being pleaded.

Following the rule laid down in Ford v. Angelrodt, 37 Mo. 50, and in Lehnhard v. Sidway, 160 Mo. App. 83, 141 S. W. 430, it is our opinion that the telegram of acceptance herein is to be regarded as a part of defendant's contract, the same as if the provisions and

limitations therein contained had been indorsed on the draft itself. The testimony shows there was nothing indorsed upon the draft to indicate that it was made in accordance with the terms and conditions of the telegram of acceptance.

As above stated, the court gave no specific reason for sustaining the motion for a new trial, but the rule is that if the court's ruling may be sustained upon any reasonable ground, it should be done. For reasons herein stated, we are unable to say the court erred in sustaining the motion for a new trial, and the judgment is accordingly affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.