William D. CURE and Ernest F. Linhardt,
d/b/a Cure-Linhardt Construction
Company, Appellants,

v.

CITY OF JEFFERSON, Respondent.

No. 51312.

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1965.

Tweedie Fisher, Jefferson City, for appellants.

Thomas P. Rose, P. Pierre Dominique, Jefferson City, for respondent.

WELBORN, Commissioner.

This is an action by the general contractors under a contract with the City of Jefferson for the construction of a parking facility. The petition sought $62,898.96 for removal of rock in excavation for the project. A judgment in favor of the city upon its motion for summary judgment was reversed by this court for the reason that the cause was not properly determinable under such procedure. 380 S.W. 2d 305. On remand, trial before a jury was held and, at the close of plaintiffs' case, the court sustained the city's mo-

tion for a directed verdict. After the contractors' motion for new trial had been overruled, this appeal was taken.

As upon the prior appeal, the problem presented is whether or not, under the contract with the city, the contractors were entitled to be compensated at unit prices specified in the contract for the removal of rock or whether recovery should be denied for failure of the contractors to give notice to the city of such work in accordance with terms of the contract dealing with "changes in the work" and "claims for extra cost."

The contract (on "(t)he Standard Form of Agreement Between Contractor and Owner for Construction of Buildings Issued by The American Institute of Architects for use when a Stipulated Sum Forms the Basis of Payment") was for a lump sum of $301,730.64 "subject to additions and deductions provided therein."

The specifications for excavation, incorporated by reference in the final contract, called for bidders to "include removal of 300 cubic feet of rock as a part of the base bid * * *." The specifications further stated: "Material to be excavated is assumed to be earth and materials that can be removed by power shovel. If rock * * * is encountered, the contract amount shall be adjusted in accordance with unit prices * * *." The bid form submitted by plaintiffs, likewise incorporated in the final contract, fixed a unit price of $2.00 per cubic foot for rock excavation of more than 300 cubic feet and $3.00 per cubic foot for less than 300 cubic feet. The contractors rely primarily on these provisions.

The city, on the other hand, contends that recovery is barred because the contractors failed to comply with the "General Conditions of the Contract" dealing with changes in the work and claims for extra cost. Article 15 of the printed A. I. A. Standard Form of "General Conditions of the Contract" gave the city the right to order extra work or to make changes, but any

such work involving extra cost required a written order "from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered * * *."

Article 15 also provided: "Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the drawings and specifications the contract sum shall be equitably adjusted upon claim by either party made within [5 days] after the first observance of the conditions."

Article 16 provided: "If the Contractor claims that any instructions by drawings or otherwise involve extra cost under this contract, he shall give the Architect written notice thereof within [5 days] after the receipt of such instructions, and in any event before proceeding to execute the work, * * * and the procedure shall then be as provided for changes in the work. No claim shall be valid unless so made."

Our reversal upon the previous appeal of the summary judgment in favor of the city was based upon the premise that the contract, considered as a whole, was not so clear and unambiguous that failure on the part of the contractors to comply with Articles 15 and 16 precluded, as a matter of law, recovery by the contractors. Our view was that whether or not the rock excavation in excess of 300 cubic yards was a "change in the work" or whether or not the contractors' claim was a "claim for * * * extra cost" within the meaning of the contract could not be determined without resort to extrinsic evidence.

It is our conclusion that the evidence adduced by plaintiffs demonstrated the inconsistencies and ambiguities of the contract documents which we anticipated upon the prior appeal. According to plaintiff Cure, he examined the core drillings made at the construction site and incorporated

in the specifications and concluded that excavation to the levels required by the plans would obviously involve the removal of more than 300 cubic feet of rock. Other contractors testifying on behalf of plaintiffs testified that they reached the same conclusion. Cure testified that he did not, however, before submitting his bid, endeavor to estimate the exact amount of rock which might be expected. As directed by the specifications, he accepted the arbitrary assumption that 300 cubic feet of rock were to be removed, submitted his bid on such basis and relied upon his unit price quotation to take care of rock removal in excess of 300 cubic feet. The fact that the contract was on a printed A. I. A. form for a "stipulated sum" contract would not, contrary to the contention of the city, make such an assumption on the part of the contractors contrary to the terms of the contract documents. The contract expressly provided that the contract price was "subject to the additions and deductions provided therein." The provisions of the specifications for compensation for rock removal at unit prices certainly could reasonably be considered an addition provided by the contract.

Further evidence that the formal printed contract contemplated adjustment of the contract sum by unit price application appears from the printed language of Article 3, relating to the contract sum, and reading, in addition to the language above referred to as follows: "Where the quantities originally contemplated are so changed that application of the agreed unit price to the quantity of work performed is shown to create a hardship to the Owner or the Contractor, there shall be an equitable adjustment of the Contract to prevent such hardship."

The specifications did state that the material to be excavated was "assumed to be earth that can be removed by power shovel." However, plaintiffs' testimony showed that such assumption was contrary to the facts revealed by the site drillings, a part of the specifications. The fact that inclusion of removal of 300 cubic feet of rock was directed to be made in the bid and that unit prices were required to be fixed for rock removal might well indicate that the city's architects who prepared the specifications were aware that rock would be encountered at the site.

Plaintiff Cure testified that, when work on the project was undertaken, the overburden on the site was removed, revealing rock consistently with the drilling report, except that at one test hole, the drilling report showed rock at a level 12 inches lower than that encountered by plaintiffs. By means of a level, elevations were shot as the rock was removed and plaintiffs' calculation of the volume of rock removal was based upon their records so compiled. Plaintiffs introduced testimony that the material removed was rock within the meaning of the specifications.

The contractors admitted that no effort was made to obtain a written order from the city authorizing removal of rock in excess of 300 cubic feet. According to Cure, after the overburden was removed, he went over the site with the city's architect and pointed out locations in which rock had been encountered. He also obtained permission of the city engineer to blast the rock formation with dynamite to facilitate its removal. The city's architect was on the site from time to time as the removal progressed. The rock excavation took six weeks. On October 17, 1961, several weeks after completion of the excavation, plaintiffs submitted to the architect a "change order" request, as follows: "We request a change order for the following item as per contract: Partial Billing, 15,000 cubic feet of rock excavation at $2 a cubic foot, $30,000." On October 26, the architect advised the contractors that, since they had not asked for a change order before proceeding with the work and did not give the city an opportunity to examine the material which the contractors classified as rock, the request was turned down. On October 26, the contractors submitted their billing

for the entire amount removed and the amount here sued for, but payment was refused.

The city contends that the contractors, by their conduct, construed the contract to require a change order and prior consent by the city to any work which involved an addition to the contract price. Plaintiff Cure did testify that on five or six occasions the contract sum was adjusted through change orders initiated by the contractors. The following appears in the interrogation of Cure:

"Q My question was: It was your interpretation of this contract that for any work which was covered in the unit prices above the contract sum, that you had to ask for a change order and have it approved before you were entitled to be paid?

"A To get the contract sum adjusted; yes, sir."

However, Cure testified that as to items other than rock excavation which were covered by unit prices, he did the work without prior approval and was paid at unit prices. He referred specifically to pressure grouting for which $7900 was received in addition to the contract sum. The specifications called for the lump sum bid to "assume" the use of 15 cubic feet of grouting for each foundation pier. The specifications further called for unit prices for pressure grouting in excess of and less than the base bid. The plaintiffs' bid specified $4.00 per cubic foot for excess and $1.00 per cubic foot for less than the base bid. If, as Cure testified, the contractors were compensated for the pressure grouting without prior approval of the work by the city, the construction of the contract in that regard by both the city and the contractors would appear to be consistent with the position here taken by the contractors.

The city points out that, before the work was begun, a conference, attended by the mayor, the architect and Cure was held, at which the pressure grouting cost was discussed and apparently it was decided to set up a reserve of some $15,000 for such cost.

The city says that there was no discussion of extra cost for rock excavation. However, Cure testified that at the conference he told the mayor that there were two things which might "run more money." One was that he did not know "what we would encounter down there in the amount of rock. And Mr. Van Hoefen (the architect) explained this to Mayor Whaley." We would not consider this evidence to compel the conclusion that the city contemplated extra cost for grouting, but not for rock excavation and that the contract must be construed accordingly.

The city contends that Article 15, dealing with conditions encountered below the surface at variance with conditions indicated by the drawings and specifications, became applicable when the contractors encountered a substantial amount of rock in excess of 300 cubic feet, and that it was then incumbent upon the contractors to notify the city if they intended to have the contract sum adjusted. The difficulty with this position is that, according to plaintiffs' evidence, the conditions actually encountered were not at variance with conditions indicated by one item of the specifications, the Wabash drilling reports. Furthermore, the portion of Article 15 relied upon, a standard printed form, would in no event appear to apply to adjustments in accordance with unit prices. It speaks of "equitable" adjustment, whereas the contract specified a unit price for rock removal. In our opinion, the provision relied upon must have been intended to apply, in this instance, to conditions other than rock, the presence of which was not unexpected and for the removal of which a definite price was agreed upon by the city and the contractors, subject, perhaps, to the above referred to provision of Article 3 of the contract, providing for adjustment of unit prices.

In our opinion, the contract, considered as a whole, is ambiguous as to the contractors' claim; resort to extrinsic evidence to resolve such ambiguity is permissible; the contractors' evidence was sufficient to make a prima facie case for a con-

struction favorable to their claim and the direction of a verdict against the contractors was error.

We are not persuaded otherwise by any authorities cited by the city. Mullins v. Kansas City, 268 Mo. 444, 188 S.W. 193, was concerned primarily with a city's obligation to pay a sum in addition to a stipulated contract price, based upon oral assurance by city officials. The contract there involved was for the construction of an embankment. The contract provided that earth for the work was expected to be procured on land owned by the city or which it might secure. After about 20,000 cubic yards had been removed from land owned by the city, the earth from such site was found to be inadequate for the purpose and the city purchased another tract of land from which 77,000 cubic yards were removed. The new tract required an average haul of 447 feet greater than that from the old tract and the contractor complained that this imposed an extra cost upon him which was not contemplated under the old contract. Although the case was concerned primarily with the effect of alleged oral assurance of payment by city officials, the court did note that recovery on the original contract would be precluded by failure of the contractor to comply with provisions of the contract, similar to those of the contract here under consideration, pertaining to claims for extra work. However, the court not having been primarily concerned with this aspect of the case, did not even consider whether or not the claim was for extra work and inferred that, inasmuch as the earth was obtained from city property, the entire operation was within the terms of the original contract.

Des Moines Plumbing & Heating Co. v. Magarian et al., 201 Iowa 647, 207 N.W. 750, and Iowa Electric Light & Power Co. v. Hopp et al., 221 Iowa 680, 266 N.W. 512, involved claims for work clearly not contemplated by the original contract. City of Salisbury v. Lynch-McDonald Construction Co., Mo.App., 261 S.W. 356, Orpheum Theater and Realty Co. v. Kansas City Casualty Co., Mo.Sup., 239 S.W. 841, and Hunt v. Owen Building & Inv. Co., Mo. App., 219 S.W. 138, deal with contract provisions for extra work, but none is remotely similar to the situation here.

■■■ One other matter raised by appellants merits attention. On the prior appeal, we stated that the contract is to be construed "in the light of the surrounding circumstances, applicable customs and usages, the parties' own interpretation of the contract and other evidence bearing on the question of its meaning." 380 S.W.2d 312. This was hardly a novel pronouncement. See Liberty Storage Co. v. Kansas City Terminal Warehouse Co., Mo.App., 340 S.W.2d 189, 192[3]; Gabel-Lockhart Co. v. Gabel, 360 Mo. 518, 229 S.W.2d 539, 543 [3]; Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 268[5–7]. At the trial, the trial court considered our statement an invitation to the contractors to amend their petition to allege any relevant custom and usage, and that, since the contractors failed to do so, evidence of such matters was inadmissible. If the contractors sought to rely upon substantive custom and usage, pleading thereof was required. However, merely evidentiary custom and usage, designed to shed light on the intention of the parties and thereby to aid in construction of the contract, need not be pleaded. Murphy v. Reed, Mo.App., 193 S.W.2d 947, 950 [6]; Wallace State Bank v. Corn Exchange Bank, 220 Mo.App. 1062, 282 S.W. 86, 88[7]; Wehmeier v. Yontz, 215 Mo.App. 240, 256 S.W. 145, 147–148[5].

■■■ Proper evidence of custom and usage in the construction industry in the Jefferson City vicinity would be admissible for such purpose, without having been pleaded. Since we do not know in what form plaintiffs' proof in such regard might appear on a new trial, we will not endeavor to pass in detail upon the offers of proof at the trial here under review. We do agree with the trial court that another contractor's interpretation of the contract in the light of his experience is not the

**732**

proper method of showing a custom or usage which might bear upon the construction of the contract. If custom does exist which bears upon the question, the effect of such custom is for the court or jury.

The judgment is reversed and the cause remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HYDE, P. J., and HOLMAN and HENLEY, JJ., concur.

DONNELLY, J., concurs in result in separate opinion filed.

DONNELLY, Judge (concurring).

I agree that, in interpreting the contract involved here, we cannot rule as a matter of law which party shall prevail.

However, it has long been the law in this State that a contract made by a municipality may not be modified or enlarged by verbal promises or commitments made by its officers. In United Const. Co. v. City of St. Louis, 334 Mo. 1006, 1020, 1021, 69 S.W.2d 639, 646, it was said: "* * * Section 2962, R.S.1929 * * * requires that contracts of this character made by municipalities must be made in advance of doing the work and in writing, which shall specify the price to be paid. The contract cannot be modified, changed, or enlarged by verbal promises, and any such promise to pay more for the work than the contract provides is void. Municipal officers have no such powers, and can do nothing except to see to it that the contract is complied with as made and the work and material paid for as the contract specifies. The intent of the law is to place all bidders and contractors on an exact equality without chance of fa-

voritism, and, when the contract is once made, the officers in charge of the work are executive and not contracting agents of the city. * * *"

The principal opinion infers that where an ambiguity exists in a contract involving a municipal corporation as a party, oral representations or conduct of officials of the municipal corporation may be introduced in evidence by the adverse party to show a construction or interpretation of the contract by the municipal corporation different from that urged by the municipal corporation at the trial. I do not believe the existence of ambiguities in a contract lessens the need for application of the general rule quoted above.

Therefore, I concur in result.