Miriam **KASKOWITZ,**
**Plaintiff/Appellant,**

v.

**COMMERCE MAGAZINE, INC.,**
**Defendant/Respondent.**

**No. 57406.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 31, 1990.

Mary Ann Weems, Clayton, for plaintiff/appellant.

Mary M. Murphy, Clayton, for defendant/respondent.

GRIMM, Judge.

Plaintiff Miriam Kaskowitz sued defendant Commerce Magazine Inc. for breach of contract, wrongful discharge, and issuing an improper service letter. The trial court sustained defendant's motion for summary judgment, and plaintiff appeals. We affirm.

Plaintiff raises three issues on appeal. First, the trial court erred in granting summary judgment on the issue of breach of contract. We disagree, because plaintiff failed to refute facts showing she had been fully paid. Second, the trial court erred in granting summary judgment on the issue of wrongful discharge. We disagree, because plaintiff was an employee at will. Third, the trial court erred in granting summary judgment on the issue of the service letter claim. We disagree; because, under the facts before the trial court, plaintiff did not sustain any damages from the service letter.

## I. Background

Defendant is the official publication of the St. Louis Regional Commerce and Growth Association. In November, 1984, plaintiff interviewed for employment with defendant. Following meetings with the marketing director for the RCGA and with defendant's editor in chief, they offered plaintiff a position as defendant's sales manager.

Plaintiff was offered a base salary plus commissions on sales exceeding $200,-000.00. Plaintiff received a confirmation letter from the marketing director dated November 14, 1984. On November 20, 1984, she wrote him and accepted the position.

On January 22, 1985, plaintiff, the editor, and the president of the RCGA signed an untitled document which contained the terms of plaintiff's compensation. This document and the confirmation letter from the marketing director are the documents on which plaintiff bases her claim that she had a contract with defendant.

Plaintiff worked for defendant throughout 1985. Near the end of 1985, plaintiff spoke with the editor in an attempt to renegotiate their agreement for the upcoming year. At that time, however, the magazine was undergoing a change in management. Plaintiff and the editor, therefore, agreed to maintain the existing agreement until the new president took over.

Plaintiff continued working for defendant, under the new management, until she was discharged on June 20, 1986. The agreement was never renegotiated.

In an August 25, 1986 service letter sent to plaintiff, defendant's new executive director outlined the reasons for terminating plaintiff's employment. First, he pointed out that plaintiff was responsible for excessive billing discrepancies. Second, he cited the sales department's failure to meet monthly advertising quotas while under plaintiff's management for the period of January through May of 1986. Third, he stated defendant's management had "determined that [plaintiff] lacked the necessary skills to hire and manage the necessary sales force to properly achieve monthly sales budgets and goals."

## II. Breach of Contract

■ In her first point, plaintiff asserts "the trial court erred in granting summary judgment on the issue of breach of contract for unpaid commissions." She claims defendant failed to pay her commissions on advertisements pursuant to her contract.

Plaintiff was an employee at will, as we discuss in section III. Thus, the only question presented is whether plaintiff was paid the amount due her at the time of her termination.

It is uncontroverted that defendant paid plaintiff's salary earned before her termination. Likewise, defendant paid plaintiff her commissions on advertisements sold and which appeared in issues of defendant's publication printed prior to plaintiff's discharge. Plaintiff, however, claims defendant breached their contract by failing to pay her commissions on advertisements which were sold but which were to appear in publications after she was terminated.

Once "a motion for summary judgment is made and supported . . . , an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . shall set forth specific facts showing that there is a genuine issue for trial." Rule 74.04(e). "If he does not so respond, sum-

mary judgment, if appropriate, shall be entered against him." *Id.; see also Seliga Shoe Stores, Inc. v. City of Maplewood,* 558 S.W.2d 328, 331 (Mo.App.E.D.1977). If the facts alleged in support of the motion for summary judgment are not denied by counter-affidavit or otherwise, they are deemed admitted and taken as true. *Seliga,* 558 S.W.2d at 331.

Here, both parties' pleadings, two depositions, and defendant's motion for summary judgment were before the trial court. In addition, defendant filed suggestions in support of its motion, which identified deposition testimony. Further, defendant filed two affidavits.

In response, plaintiff filed an answer to the motion for summary judgment. Plaintiff also filed two personal affidavits, to which were attached copies of the November 14, 1984 letter and the January 22, 1985 document.

In support of its motion for summary judgment, defendant cited deposition testimony that it was standard operating procedure that a sales commission is not earned until the advertisement actually runs. Further, "that this is the standard procedure in the advertising industry." Defendant argues, therefore, that plaintiff earned no commissions on advertisements which were to appear in issues published after her termination.

Plaintiff's affidavits did not present any facts, or anything else, which contested this testimony. Nor did she establish, or attempt to establish, that she and defendant had any agreement contrary to the standard operating procedure or industry standard.

As a result, the facts submitted by defendant are deemed admitted and taken as true. *Seliga,* 558 S.W.2d at 331. "The admission of the alleged fact, however, does not automatically warrant summary judgment." *Id.* Here, though, the facts do entitle defendant to summary judgment as a matter of law.

The facts showed that plaintiff was paid the salary and commissions she earned prior to her discharge. Further, she has

failed to contradict the facts showing that she did not earn any commissions on advertisements which ran after her termination. Thus, she has no claim for the damages she sought.

The trial court did not err in granting summary judgment on the breach of contract issue. Point denied.

### III. Wrongful Discharge

■ In her second point, plaintiff contends the trial court erred in granting summary judgment on the issue of wrongful discharge. She argues that there was a material question of fact regarding the existence of an employment contract.

A summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Rule 74.04(c). "The test by which to measure whether a genuine issue of fact exists is to ask if there is the slightest dispute as to the facts." *Kostelac v. Triangle Transfer Co.*, 668 S.W.2d 621, 622 (Mo.App.W.D. 1984). "On appeal we review the record on summary judgment in the light most favorable to the party against whom the judgment is rendered...." *Seliga,* 558 S.W.2d at 331. If, however, "as a matter of law, the judgment is sustainable on any theory, it must be affirmed." *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App.S.D. 1984).

Plaintiff claims that the November 14, 1984 letter and the document dated January 22, 1985, constituted her employment contract. She alleges that these documents set out the terms, compensation, and duration of her employment. She states that the original agreement was for 1985 and was extended through 1986 by oral agreement with defendant's editor.

Plaintiff in her deposition admitted, however, that the duration of her employment was never discussed. Also, the parties never talked about what would happen if she was fired or if she quit. Further, neither letter contained any reference to length of employment, nor did they contain any non-compete agreement. Nor did either the letter or document limit the reasons for which she could be discharged.

"A cause of action for wrongful discharge is pleaded by allegations which delineate the elements of a valid employment contract, and a discharge in violation of its terms." *Krasney v. Curators of the Univ. of Missouri,* 765 S.W.2d 646, 651 (Mo.App. W.D.1989). "That is to say, unless there is a contract which specifies the duration of the employment or limits the reasons for which the employee may be discharged, the employment is at the will of either party." *Id.* " 'The law in this state has been well stated that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will, and may be terminated by either party at any time, and no action can be sustained in such a case for a wrongful discharge.' " *Campbell v. Sheraton Corp.,* 363 Mo. 688, 253 S.W.2d 106, 110 (1952) (quoting *Brookfield v. Drury College,* 139 Mo.App. 339, 123 S.W. 86 (S.D. 1909)). An employee at will can "be discharged for cause or without cause." *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 663 (Mo. banc 1988).

Plaintiff was an employee at will and, as such, has no cause of action for wrongful discharge. Defendant was entitled to a summary judgment as a matter of law. Point denied.

### IV. Service Letter

■ In her third point, plaintiff alleges the "trial court erred in granting summary judgment on the issue of the service letter claim." Plaintiff's petition alleges she was damaged, because the reasons for her termination stated in the service letter she received from defendant were inaccurate and cannot be substantiated.

In its motion for summary judgment on the service letter claim, defendant alleged that "Plaintiff's deposition makes it clear that Plaintiff suffered no damages as a result of the letter Defendant provided." Defendant referred the trial court to specific references in plaintiff's deposition, which

was taken 28 months after she was discharged.

In her deposition, she indicated that immediately after her termination, she had job interviews. She did not show the service letter to anybody. No one asked to see the service letter. She computes her damages solely on "credibility, humiliation, embarrassment."

Although plaintiff filed two affidavits in response to defendant's motion for summary judgment, neither affidavit mentions the service letter claim, nor do they attempt to refute or recant her deposition testimony. Plaintiff did not file any affidavit that she had been unable to find employment.

Here, there is no indication that any facts existed by which plaintiff could show the elements required to recover substantial actual damages as set out in *Herberholt v. DePaul Community Health Center*, 625 S.W.2d 617, 622 (Mo. banc 1981). Plaintiff does not contend that the service letter she received does not comply with § 290.140, RSMo 1986. Nor is there any showing that the service letter was inadequate. Thus, she is not entitled to nominal damages.

As stated above, plaintiff cannot "rest upon the mere allegations or denials of [her] pleading." Rule 74.04(e). Rather, since defendant supported its motion for summary judgment with facts, plaintiff "must set forth specific facts showing that there is a genuine issue for trial." *Id.* Because plaintiff has failed to do so, the facts submitted by defendant are deemed admitted and taken as true. *Seliga*, 558 S.W.2d at 331.

Plaintiff's third point is denied.

The judgment is affirmed.

SATZ, P.J., and SMITH, J., concur.