**Thelmar D. PRATT, Appellant,**

v.

**SEVENTY–ONE HAWTHORNE PLACE ASSOCIATES, L.P., et al., Respondents.**

**No. WD 61450.**

Missouri Court of Appeals, Western District.

June 17, 2003.

Philip E. Nonnemaker, Lee's Summit, MO, for appellant.

Michael D. Strohbehn, Leland H. Corley, Kansas City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, PATRICIA BRECKENRIDGE, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Chief Judge.

Thelmar Dale Pratt appeals from a judgment entered in the Circuit Court of Jackson County granting Respondent Miller Building Services, Inc.'s Motion for Summary Judgment. For the following reasons, we reverse the trial court's judgment.

"When considering an appeal from an entry of summary judgment, we review the record in the light most favorable to the non-movant." *Ackerman Buick, Inc. v. General Motors Corp.*, 66 S.W.3d 51, 53 (Mo.App. E.D.2001). So viewed, the record reflects the following.

In 1993, Appellant was hired by David Miller to serve as a general superintendent for Miller Building Services, a commercial remodeling company. Appellant was a full-time employee who worked forty hours per week and was paid by the hour. Occasionally, when business was light, Mr. Miller would encourage Appellant to solicit other business for the company on his own time. In exchange for obtaining extra business for the company, Mr. Miller would pay Appellant a negotiated percentage of the net profits from any jobs he obtained for the company.

In early August 1998, Mr. Miller asked Appellant if he would like to help in preparing a bid for the renovation of the Hawthorne Place Apartments. Mr. Miller told Appellant that, if he helped prepare the bid and Miller Building Services got the contract, Miller Building would pay

him ten percent of the net profit from the job. About a week later, Appellant contacted Mr. Miller and told him that he wanted twenty percent of the net profit for helping to prepare the bid. Mr. Miller agreed to pay the twenty percent.

At some point prior to September 1, 1998, Appellant told Mr. Miller that he wanted to rejoin the union in order to obtain union benefits. Pursuant to that request, Mr. Miller agreed to change Appellant's employment from Miller Building Services to Interior Wall Systems, Inc., another company wholly owned by Mr. Miller that had a collective bargaining agreement with the union. That change was made on September 1, 1998. After this change, Appellant continued to perform the same job duties that he had been prior to the change.

On September 3, 1998, Mr. Miller and Appellant put together the bid for the Hawthorne project using the information that had been gathered by Appellant. On September 18, 1998, Miller Building's bid on the Hawthorne project was accepted, and Miller Building entered into a contract with the property owner to serve as the general contractor on the project. Subsequently, Mr. Miller assigned Appellant to serve as the superintendent on the Hawthorne project.

On May 24, 1999, Mr. Miller met with Appellant and told him that he "wanted him out" by July 1. After Mr. Miller assured Appellant that he would be receiving twenty percent of the net profit on the project, Mr. Miller and Appellant agreed that Appellant's employment would terminate on June 4, 1999. As of Appellant's last day of employment on June 4, 1999, the project was between fifty and eighty percent complete.

The Hawthorne project was substantially completed in late December 1999. Subsequently, Appellant demanded his twenty percent of the net profits, and Miller Building told him that he was not entitled to it because he had not served as superintendent on the project to its completion.

On May 2, 2000, Appellant filed a petition in the Circuit Court of Jackson County against Miller Building and the five different owners of the Hawthorne Place Apartments. In one count of his petition, Appellant claimed Miller Building had breached its contract to pay him twenty percent of the net profits from the Hawthorne project. In the other count, Appellant sought an order to enforce a mechanics lien against the property owners for that money.

On November 8, 2001, Miller Building filed a motion for summary judgment. Miller Building contended that the undisputed facts established that Appellant was an at-will employee of Miller Building who had been terminated prior to the completion of the Hawthorne project. Miller Building further claimed that it was uncontroverted that Appellant was required to serve as superintendent on the project to its completion in order to be entitled to a percentage of the net profits under the oral agreement reached by Mr. Miller and Appellant. Miller building argued that "[a]s a matter of law, following the end of his employment, [Appellant] had no legal right to seek future, executory bonus payments that he had not earned." Miller Building further argued that the terms of the agreement could not be enforced because it was indefinite as to the amount owed to Appellant at the time the agreement was entered into and at the time of his termination. Miller Building claimed that the amount owed under the agreement could not be calculated until after the project was completed and cited to *Crowell v. Houde Engineering Corp.*, 19 S.W.2d 516 (Mo.App.1929), for the proposition that "an agreement to pay a bonus of an indefi-

nite amount is unenforceable." Miller Building also contended that the oral agreement did not make it clear how net profit would be calculated by Mr. Miller and was, therefore, too indefinite to be enforced.

Miller Building's motion for summary judgment was argued to the court on January 22, 2002. On April 19, 2002, the trial court entered its Judgment sustaining the motion for summary judgment.[1] The court ordered that judgment be entered in favor of Miller Building and that the cause be dismissed. Appellant appeals from that judgment.

■ " 'The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law.' " *Larison v. Public Water Supply Dist. No. 1 of Andrew County,* 998 S.W.2d 192, 195 (Mo.App. W.D.1999) (quoting *Bonds v. Missouri Dep't of Mental Health,* 887 S.W.2d 418, 421 (Mo.App. W.D.1994)). " 'The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.' " *Ackerman Buick, Inc.,* 66 S.W.3d at 53 (quoting *Hubbard v. Lincoln County R–III Sch. Dist.,* 23 S.W.3d 762, 763 (Mo.App. E.D.2000)). "A summary judgment will be affirmed if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Leathers v. Missouri Highway & Transp. Comm'n,* 961 S.W.2d 83, 84 (Mo. App. W.D.1997).

■ Where the movant has sufficiently averred facts, with supporting citation to the record, which would entitle the movant to judgment as a matter of law, "[t]he nonmovant must show by affidavit, depositions, answers to interrogatories, or admissions on file, that one or more material facts shown by the movant to be beyond any genuine dispute is, in fact, genuinely disputed." *Ackerman Buick, Inc.,* 66 S.W.3d at 54. In determining whether an issue is genuinely disputed, we "view the record in the light most favorable to the party against whom judgment was entered and afford that party all reasonable inferences that may be drawn from the evidence." *Leathers,* 961 S.W.2d at 84.

Both parties have devoted much of their arguments, both at the trial court level and on appeal, to whether Appellant should be deemed to have been an employee of Miller Building or an independent contractor working for Miller Building at the times relevant to this case. However, the resolution of that question is unnecessary to our analysis of whether summary judgment was properly granted.

■ Even assuming that Appellant was an at-will employee of Miller Building until the termination of his employment in June 1999, an employer has an obligation to pay terminated employees for all wages, bonuses and/or commissions earned by the employee prior to the termination of the employment. *See Kaskowitz v. Commerce Magazine, Inc.,* 793 S.W.2d 628, 630 (Mo. App. E.D.1990); *Usery v. Lessley,* 803 S.W.2d 187, 188 (Mo.App. S.D.1991); *Null v. K & P Precast, Inc.,* 882 S.W.2d 705, 707 (Mo.App. E.D.1994); *Whale Art Co. v. Docter,* 743 S.W.2d 511, 515 (Mo.App. E.D. 1987); *Venable v. Hickerson, Phelps, Kirtley & Assoc.,* 903 S.W.2d 659, 664 (Mo.App. W.D.1995). Miller Building's motion for summary judgment rested upon its claims that the agreement between Appellant and Miller Building was for an "incentive bonus" that was conditioned upon Appellant serving as superintendent on the project to its completion and his continued employ-

---

1. The trial court's judgment did not contain any findings of fact or conclusions of law.

ment with the company until the profits from the project were calculated and the bonus was distributed. Miller Building averred that it was uncontroverted that these conditions precedent were part of the agreement between Appellant and Miller Building.[2]

Miller Building attempts to rely upon *Kaskowitz v. Commerce Magazine, Inc.,* 793 S.W.2d 628 (Mo.App. E.D.1990), in support of its argument; however, *Kaskowitz* actually provides more support for Appellant. In *Kaskowitz,* the plaintiff's employer had paid her all of the salary she had earned along with commissions on the advertisements that she had sold which had run prior to her date of termination. *Id.* at 630. In her petition, the plaintiff sought to recover commissions for advertisements she had sold which ran in the magazine after her employment was terminated. *Id.* In its motion for summary judgment, the employer presented evidence that sales commissions on magazine advertisements were not earned until the advertisement actually ran in the publication and that this was the standard procedure in the advertising industry. *Id.* The court granted summary judgment against the plaintiff because she failed to point to any evidence establishing that she had an agreement with the company to be paid differently than the industry custom or to otherwise challenge the employer's evidence. *Id.* The court held that an employer was entitled to summary judgment where it established that it had paid the former-employee/plaintiff all salary and commissions earned prior to her termination. *Id.* at 630–31.

Unlike the plaintiff in *Kaskowitz,* in response to Miller Building's motion for summary judgment, Appellant challenged the existence of the alleged conditions precedent and cited to evidence in the record to support that contention. With regard to the Seventy–One Hawthorne Place job, Appellant testified in his deposition that Miller had asked him if he wanted to help him in preparing the bid for the job and agreed that, in exchange for those efforts, he would pay him twenty percent of the net profit from the job if Miller was awarded the contract. Appellant testified that these were the only terms of the agreement. Appellant testified that he did extensive work on preparing the bid at home on his own time, performing tasks that were not part of his ordinary job duties, and that, as a result of his efforts and those of Mr. Miller, Miller Building was awarded the job. Appellant testified that, while he had assumed he would likely be assigned to supervise the project after it was awarded because of his familiarity with it, Mr. Miller did not inform him that he would be the superintendent for the project at that time and that Miller had never indicated to him that his performance of supervisory duties on the project was required for him to receive the promised twenty percent of the net profits from the job. Appellant further testified that, during the discussion over the termination of his employment, Mr. Miller had assured him that he would be paid the negotiated twenty percent of the profits from the job.

■ Appellant's testimony, if believed, would constitute proof that the terms of the agreement were certain and did not require him to serve as superintendent on the project or to remain an employee of Miller Building until the profits from the

**2.** "A condition precedent is a condition which must be *fulfilled before the duty to perform* an existing contract arises." *Lowery v. Air Support Int'l, Inc.,* 982 S.W.2d 326, 329 (Mo. App. S.D.1998). "[N]o promise based upon a condition can be enforced as such until the contingency upon which it depends has happened." *Id.*

project were calculated.[3] Furthermore, his testimony would support a finding that the conditions required for his right to the bonus/commission were met when the bid on the Hawthorne project was accepted. Accordingly, a genuine issue of material fact exists regarding the terms of Appellant's verbal agreement with Miller Building and whether all of those terms were satisfied by him, and Respondent was not entitled to judgment as a matter of law based upon the alleged failure to satisfy the conditions of the agreement.[4] *Null,* 882 S.W.2d at 708.

The only other theory offered by Miller Building to support its motion for summary judgment was that the terms of the agreement with Appellant were too indefinite to be enforceable. Miller Building argued that the fact that the amount owed to Appellant could not be ascertained until after the completion of the project rendered the twenty percent bonus/commission speculative and, therefore, unenforceable. Miller Building further claimed the agreement was indefinite because Appellant and Mr. Miller did not discuss the manner in which net profit would be calculated on the project.

In support of its theory, Miller Building cited to *Crowell v. Houde Engineering Corp.,* 19 S.W.2d 516 (Mo.App.1929), for the proposition that "an agreement to pay a bonus of an indefinite amount is unenforceable." In *Crowell,* a former employee sought to enforce an agreement by the company to pay him "a part of [the] profits" if the company made a profit from the sales made in his business territory. *Id.* at 518. The court found that the terms of the promised bonus were too indefinite for the court to enforce because the agreement between the parties "did not fix any proportion between the profit which the defendant was to make and the bonus to be paid by reason thereof." *Id.* The court stated that the contract could not be enforced because "the agreement provided no basis upon which the court could arrive at the measure of recovery." *Id.*

Unlike *Crowell,* the terms of the agreement between Appellant and Miller Building were sufficiently specific to allow for the court to ascertain the amount that was due. Both Appellant and Miller testified that the amount of the bonus/commission to be paid to Appellant was twenty percent of the net profit from the project. These terms were sufficiently definite to allow a court to calculate the amount due under the agreement and to enforce the

---

**3.** Pratt's testimony related to his prior dealings with Miller Building further supported his claim that his service as superintendent on the project was not a condition precedent to his receipt of a percentage of the net profits for work he obtained or helped to obtain for the company on his own time. Pratt testified that Miller had encouraged him in the past to attempt to procure additional business for the company on his own time and that Miller would pay him a negotiated percentage of the profit netted from those projects if the company's bids were accepted. Pratt also testified about numerous jobs that he had solicited for Miller and how he had been paid a percentage of the net profit for procuring that business. Pratt stated that he would work on making bids for these projects after work on his own time and that preparing bids involved

a substantial amount of time and effort. He claimed that the tasks involved in making a bid for a project were substantially different from his duties as a supervisor. Pratt said that he did most of the work on these bids at home at night. He testified that Miller had never conditioned his receipt of the negotiated percentage of the net profits on his continued employment and supervision of the project to its completion. Pratt also testified that, for jobs where he did not solicit the work, he was simply paid his hourly wage for serving as superintendent on the project.

**4.** "Summary judgment is not proper where a genuine issue of material fact exists." *Schwartz v. Custom Printing Co.,* 926 S.W.2d 490, 493 (Mo.App. E.D.1996).

terms of the contract. *See Swetnam v. U.S. By–Products Corp.*, 510 S.W.2d 829 (Mo.App. W.D.1974);[5] *Venable*, 903 S.W.2d at 664.[6]

■ Miller Building's contention that the parties' failure to specifically define the term "net profit" should render the contract too indefinite to be enforceable is likewise without merit. Where a contract utilizes the term "net profit" and does not provide any further definition of that term, the court reviewing the contract will "interpret the meaning of 'net profits' in accord with the contracting parties' intention so as to reach an interpretation that is fair and reasonable considering 'the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances attending the execution of the contract and its interpretation by the parties.' " *Siteman v. Marine Petroleum Co.*, 511 S.W.2d 436, 439 (Mo.App. E.D.1974) (quoting *Gabel–Lockhart Co. v. Gabel*, 360 Mo. 518, 229 S.W.2d 539 (1950)).[7] Therefore, the failure of the parties to define the term "net profit," a term commonly used utilized in contracts, does not render the contract too indefinite to be enforceable. *See Id.*

Having found that Miller Building was not entitled to judgment as a matter of law under any of the theories asserted in its motion for summary judgment, we must reverse the judgment of the trial court and remand the cause for further proceedings.

All concur.

---

5. In *Swetnam v. U.S. By–Products Corp.*, 510 S.W.2d 829 (Mo.App. W.D.1974), a former employee claimed to be entitled to a bonus payment pursuant to an oral agreement by the employer to pay a bonus based on the profits of the employer before taxes. The trial court found that the employee was entitled to the bonus, and the employer appealed. *Id.* at 829. The employee testified that the company orally agreed that he would be paid a specific percentage of company profits in addition to his salary for assuming new responsibilities at the company. *Id.* at 830. The company terminated the employee a few weeks prior to the running of the fiscal year and refused to pay the bonus. *Id.* The court held that, under those circumstances, "[w]here there is no evidence that a condition of the payment of the bonus is that the employee remain in the employ of the defendant until the end of the year, termination of the employment cannot defeat the recovery of a proportionate part of the bonus." *Id.* at 831.

6. In *Venable v. Hickerson Phelps Kirtley & Assoc.*, 903 S.W.2d 659, 664 (Mo.App. W.D. 1995), this Court reversed the trial court's dismissal of a former employee's claim that his former employer had breached an oral agreement to pay him a bonus of between $10,000 and $30,000 for arranging a merger.

7. With regard to the manner in which net profit would be calculated, Pratt testified that he was only aware of one way to calculate net profit on a construction job. Furthermore, Pratt testified that he had received a percentage share on several projects that he had obtained for Miller Building in the past and that net profit had always been calculated the same way. He also stated that Mr. Miller would calculate the net profit on the jobs and that he would review the figures.