**George W. COON, Appellant,**

v.

**ATCHISON, TOPEKA & SANTA FE, et al., Respondents.**

**No. WD 45036.**

Missouri Court of Appeals,
Western District.

Jan. 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 1992.

Application to Transfer Denied
April 21, 1992.

G. Spencer Miller, Kansas City, for appellant.

Roland B. Miller, III, Kansas City, for Atchison, Topeka & Santa Fe Ry. Co.

Russell Charles Ashley, Kansas City, for Burlington Northern Ry.

Lance W. LeFevre, Kansas City, for Patrick Fetty.

Before KENNEDY, P.J., and FENNER and BRECKENRIDGE, JJ.

FENNER, Judge.

Appellant, George W. Coon appeals from the order of the trial court granting summary judgment to respondent, Burlington Northern Railroad Company. In the underlying action, George Coon alleged that he was injured in a railway crossing accident when a Burlington Northern train collided with a vehicle in which he was a passenger. The accident occurred on December 14, 1987. Prior to the trial court's granting summary judgment, Coon dismissed as to all parties other than Burlington Northern and further dismissed all allegations of his petition against Burlington Northern except for his allegation that the crossing protection of Burlington Northern at the site of the accident was inadequate.

The railway crossing in question in this cause is in St. Joseph, Missouri, at a location where Illinois Street meets Cherokee Street in a "Y" intersection (hereinafter the Illinois/Cherokee crossing). There are five sets of railroad tracks running north and south at the Illinois/Cherokee crossing.

Four of the tracks are protected by automatic lights and one is protected by cross-bucks only. The following is a not-to-scale diagram of the Illinois/Cherokee crossing:

The road to the west of the Illinois/Cherokee crossing is a private roadway open to and used by the public with over 6,000 vehicles traveling through the Illinois/Cherokee crossing daily. The vehicle in which Coon was a passenger was heading west through the Illinois/Cherokee crossing when it was hit by a Burlington Northern train.

The trial court found that, as a matter of law, Burlington Northern could not be held liable for inadequate site protection because the Missouri Division of Transportation had exclusive jurisdiction of the crossing protection at the Illinois/Cherokee crossing. On appeal, Coon argues that Burlington Northern is liable because it has a common law duty to adequately protect crossings which are unusually dangerous, regardless of the statutory authority of the Missouri Division of Transportation, and further that the Illinois/Cherokee crossing is a private crossing over which the Missouri Division of Transportation has no jurisdiction.

■ Review of summary judgment is equivalent to review of a court tried or equity proceeding, and if, as a matter of law, the judgment is sustainable on any theory, the judgment of the trial court must be sustained. *McKim v. Sears Rodeo*

*Association, Inc.*, 789 S.W.2d 217, 219 (Mo. App.1990).

By the adoption of § 622.015, RSMo 1986, which became effective on July 1, 1985, the General Assembly transferred all powers, duties and functions relating to transportation activity within the State from the Public Service Commission to the Division of Transportation of the Department of Economic Development. As relevant to this cause, § 622.015, RSMo 1986, provided that within Chapter 389 and 386, RSMo, whenever the word "Commission" is used the word "division" shall be substituted therefore.[1] At the time of appellant's accident, December 14, 1987, the Missouri Public Service Commission (Division of Transportation) had "jurisdiction, supervision, powers and duties ... extend[ing] ...: (1) [t]o all railroads within this state, ..." § 386.250(1), RSMo 1986. In accordance with § 386.270, RSMo 1986, all "regulations ... prescribed by the commission [division] shall be in force and shall be prima facia lawful ... until found otherwise in a suit brought for that purpose pursuant to the provisions of this chapter."

Furthermore, at the time of appellant's accident, § 386.310.1, RSMo 1986, provided that the Public Service Commission (Division): "... shall have power, after a hearing had upon its own motion or upon complaint, ... to require every person, corporation and public utility, to maintain and operate its line ... apparatus, tracks and premises in such manner as to promote and safeguard the health and safety of its employees, passengers, customers, and the public, and to this end to prescribe, among other things, the installation, use, maintenance and operation of appropriate safety and other devices or appliances, ... and other protective devices at grade crossings ... and to require the performance of any other act which the health or safety of its employees, passengers, customers or the public may demand."

At the time of appellant's accident, § 389.640.2, RSMo 1986, (now repealed) gave the Public Service Commission "... exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, ... use and protection of each crossing of ... a public road or highway by a railroad or street railroad and of a street by a railroad or vice versa...." This authority remains under the control of The Division of Transportation pursuant to § 389.610, RSMo Supp.1990.

Section 386.550, RSMo 1986, makes all final orders and decisions of the Public Service Commission (Division) conclusive in all collateral actions.

■ The Public Service Commission has exercised jurisdiction over the Illinois/Cherokee crossing. In 1969, the Commission, in Case No. 16505, issued its Report and Order finding that "[D]ue to the volume of railroad and vehicular traffic, the public safety requires an upgrading of protection at the [Illinois/Cherokee] crossing." The Commission ordered and authorized the predecessors of Burlington Northern and Santa Fe "to install automatic flashing light signals with electric bells" in accordance with the application and standards as approved by the Commission. The Commission further retained "jurisdiction of this matter for all orders necessary to carry out the provisions of its Report and Order." In 1984, the Public Service Commission authorized the installation of larger signal heads at the Illinois/Cherokee crossing.

Both Illinois and Cherokee streets are public streets. The record also reflects that over 6,000 cars pass through the Illinois/Cherokee crossing on an average daily basis. The Illinois/Cherokee crossing is arguably a public crossing because the public streets of Illinois and Cherokee feed traffic into and out of the crossing and the

---

1. A reading of the 1986 compilation of the Revised Statutes of Missouri reflects that the language of Chapter 389, as relevant to this cause, has been changed in accordance with the mandate of § 622.015, RSMo 1986, from Commission to Division. The language of Chapter 386 has not been revised in said compilation. Thus, for purposes of clarification, when provisions of Chapter 386 are quoted or referenced, the relevant language will be quoted as it appears in the 1986 compilation, with the proper language indicated parenthetically.

crossing is used by the public on a regular and frequent basis. Nonetheless, the Public Service Commission assumed control over the warning system at the Illinois/Cherokee crossing which control is not subject to attack in this collateral proceeding. The Public Service Commission (Division) had authority to assume control over the Illinois/Cherokee crossing pursuant to the language within § 386.250, § 386.310.1 and § 389.640.2, as set forth, *supra.* Appellant's argument that the Illinois/Cherokee crossing is a private crossing over which the Public Service Commission had no jurisdiction is denied as not subject to attack herein.

█ Once the Public Service Commission (Division) assumes jurisdiction and enters an order with respect to the necessary protection required at a particular crossing, the railroad has no further common law obligation in regard to what constitutes necessary crossing protection at the particular crossing. *See, Clark v. Mississippi River & B.T. Ry.,* 324 Mo. 406, 23 S.W.2d 174, 177 (Mo.1929). Where the Public Service Commission (Division) has assumed jurisdiction and exercised its authority to determine necessary crossing protection and when and where crossing gates should be installed and erected, the jurisdiction of the Public Service Commission is exclusive. *McNiff v. Missouri Pacific R.R. Co.,* 560 S.W.2d 46, 48 (Mo.App.1977).

█ It has been called to this court's attention that the case of *Thomas v. Chicago, R.I. & P. RY.,* 271 S.W. 862 (Mo.App. 1925), might be interpreted as being in conflict with *McNiff. Thomas* also involved an injury at a railroad crossing. However, in the *Thomas* case, there was evidence that the warnings required at the crossing in question were not given. In *Thomas,* the court held that even though the Public Service Commission had statutory authority to prescribe the manner and terms of installation, operation, maintenance, use and protection of railroad crossings that such authority did not relieve the railroad of its common law duty to exercise ordinary care. We do not take exception to that general proposition. However, we do hold that when the Public Service Commission (now Division) has assumed jurisdiction and made a determination of the necessary crossing protection at a given crossing, that a railroad cannot be held negligent for failing to deviate from the directive of the Commission (Division). In other words, a railroad cannot be found negligent for complying with a directive of the Public Service Commission (Division), but a railroad is liable for negligence in carrying out a directive of the Commission (Division).

The legislature has determined that public safety interests are better served by allowing the Public Service Commission (Division) to assume jurisdiction over railroad crossings in an effort to avoid injury to the public before it occurs. By so doing, the legislature has preempted the ability of the railroads to determine necessary crossing protection when the Public Service Commission (Division) assumes jurisdiction over a given crossing and makes a determination directing the necessary crossing protection. Consequently, a railroad cannot be held liable for inadequate crossing protection when they are in compliance with the directives of the Public Service Commission (Division).

█ In the case at bar, the Public Service Commission made a determination directing the necessary crossing protection at the Illinois/Cherokee crossing and the only allegation against Burlington Northern was that the crossing protection, as directed by the Public Service Commission, was inadequate.

The judgment of the trial court granting summary judgment on behalf of Burlington Northern is affirmed.

All concur.