Rhonda **WALKER**, individually, and Joshua S. Walker, a minor by his Next Friend, Rhonda Walker, Plaintiffs/Appellants,

v.

ST. LOUIS–SOUTHWESTERN RAILWAY COMPANY, a Railroad Corporation, Defendant/Respondent.

No. 59816.

Missouri Court of Appeals,
Eastern District,
Division One.

June 23, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Aug. 5, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Donald Rhodes, Bloomfield, for plaintiffs/appellants.

John R. Musgrave, Jon M. Moyers, Paul M. Brown, St. Louis, for defendant/respondent.

GARY M. GAERTNER, Judge.

Appellants, the surviving spouse and the minor child of decedent, Randy S. Walker, appeal a grant of summary judgment in favor of respondent, St. Louis–Southwestern Railway Co., in their suit for wrongful death. We affirm.

On February 28, 1986, at approximately 7:30 p.m., decedent drove his 1976 Chevrolet Nova onto the Randall's Railroad Crossing in Scott County. The crossing contains two tracks, a siding track on the West side,

and a main line track on the East side. Both tracks curve toward the West at the crossing. At the time decedent's car approached from the East, the crossing was obstructed by a slow-moving train on the siding (West) track. Decedent pulled his car up to the crossing, stopping on the main line track. Eyewitnesses observed decedent move the car back and forth numerous times, rolling the car on and off the track. After several minutes, they observed decedent and his passenger step out of the car, urinate on the crossing approach, and return to the car, which, thereafter, remained stationary on the main line track. After several more minutes, a southbound train approached the crossing on the main line track. Because the slower train on the siding track obstructed the view of both the decedent and the approaching train, they could not see each other until the train was only 800 feet from the crossing. The engineer applied the train's emergency brakes and sounded the train's horn, but was unable to stop the train before it struck the decedent's car, killing both people inside.

Appellants filed their petition for wrongful death on October 14, 1987, in the Circuit Court of Cape Girardeau County. On May 24, 1990, at the close of discovery, respondent filed its first motion for summary judgment. Appellants dismissed the suit without prejudice on June 18, 1990, so respondent's motion was never heard or considered.

On July 23, 1990, appellants re-filed their petition in the Circuit Court of the City of St. Louis. On September 14, 1990, respondent again moved for summary judgment. Appellants filed an amended petition on January 25, 1991, and the court heard and sustained respondent's motion for summary judgment on January 29, 1991. This appeal followed.

Summary judgment is a drastic remedy, reserved only for those cases which present no issue of material fact. Rule 74.04(c). In ruling on a motion for summary judgment, all evidence and inferences must be viewed in the light most favorable to the non-moving party and they must be afforded the benefit of every doubt. *Eugene Alper Const. Co. v. Joe Garavelli's of West Port, Inc.*, 655 S.W.2d 132, 135 (Mo. App., E.D.1983). On appeal, we first determine whether any issue of material fact exists requiring trial, then determine whether the judgment is correct as a matter of law. *Baker v. State Farm Mut. Auto. Ins. Co.*, 806 S.W.2d 742, 743 (Mo. App., E.D.1991).

In their brief, appellants allege six issues of material fact:

(a) whether the railroad crossing that was the site of said accident was an extra-hazardous or ultra-hazardous crossing;

(b) whether the warning devices at said crossing were adequate;

(c) whether the warning devices at said crossing were adequately and properly maintained;

(d) whether respondent's train was operating at a speed commensurate with the extra-hazardous nature of said crossing;

(e) whether the crossing was too narrow; and

(f) whether the crossing itself was properly and adequately maintained.

Federal preemption has become an issue regarding four of the above claims, namely claims (a), (b), (d) and (e). The statute at issue, the Federal Railroad Safety Act, was enacted in 1970, but courts have only just begun to consider the possible preemptive effects of the statute. As a result, preemption of the above issues is a question of first impression in the Eastern District of Missouri, though other jurisdictions, including this court's Western District, have considered it.[1] We shall review each of appellants' claims individually.

---

1. In *Coon v. Atchison, Topeka & Santa Fe*, 826 S.W.2d 66 (1992), this court's Western District faced a similar issue. Appellant, George Coon, was injured when his car was hit by one of respondent's trains at a crossing. Affirming the trial court's grant of summary judgment, the Western District noted the Missouri Division of Transportation had assumed jurisdiction over the crossing, thus relieving the railroad of any further common-law duty except that of ordinary care. 826 S.W.2d at 70. The court's reasoning in *Coon* is not truly applicable to the

Appellants first allege that the crossing where the accident occurred was an extra- or ultra-hazardous crossing, imposing a common law duty upon respondent to install appropriate warning devices. Respondent argues that its common law duty has been preempted by the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 421 et seq. (1970).

Under the Supremacy Clause of Article VI of the U.S. Constitution, the U.S. Congress can enact legislation which preempts state law in a particular field. *English v. General Elec. Co.*, 496 U.S. 72, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). A determination of whether the doctrine of federal preemption is applicable depends upon congressional intent in enacting the pertinent statute. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988). Preemption can be express or implied. *Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Express preemption occurs when Congress makes its intent known through explicit statutory language. *English*, 110 S.Ct. at 2275. In the absence of explicit language, an intent to preempt State law in an entire field can be inferred from a "scheme of regulation ... so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same sub-

ject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). A presumption against preemption exists, and the party seeking to establish that state law has been preempted by a federal law or regulation has the burden of proving preemption was intended at the time of enactment. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747–48, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985).

Despite the heavy burden required for preemption, only a very small minority of jurisdictions have ruled that preemption does not apply in cases similar to the one at bar. The Eighth Circuit Court of Appeals, in *Karl v. Burlington Northern R. Co.*, 880 F.2d 68 (8th Cir.1989), held that a tort law claim is not preempted by the FRSA. The *Karl* court did not conduct substantial analysis, but merely noted that "Burlington Northern can point to no caselaw or legislative history to support the theory that Congress intended to completely occupy the field of railroad safety governance." *Karl* at 76.

A second approach, and the usual method of dealing with preemption, is to declare a field totally preempted, no matter how slight Congress' regulation is. Congressional intent to preempt, though not stated in the strongest terms, can arguably be found in FRSA § 434.[2] Given Congress' precatory language, judicial support for the idea of total Congressional preemption in the area of railroad safety is negligible; few courts have adopted this line of reasoning.[3]

---

case before us. *Coon* only dealt with the issue of state preemption; neither federal preemption nor the FRSA were ever addressed. It is significant, however, to see that the Western District sustained the grant of summary judgment, and did so on similar, albeit not identical, grounds as are presented here.

2. FRSA § 434 reads as follows:
 **National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation**
 The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until

such time as the Secretary has adopted a rule, regulation, order or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

3. *See, e.g., Armijo v. The Atchison, Topeka & Santa Fe Ry. Co.*, 754 F.Supp. 1526, 1531 (D.N.Mex.1990).

The third resolution of the preemption question was first stated in *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149 (9th Cir.1983). The court in *Marshall* determined that the Secretary of Transportation had delegated Federal authority to regulate grade crossings. *Marshall* at 1154. When a Federal decision is reached regarding the adequacy of crossing warning devices through a local agency, the court reasoned, the railroad's duty to maintain a good and safe crossing was preempted. *Id.* However, in cases where no determination has been made, preemption does not apply, and indeed, the FRSA would not even cover the warning devices at these crossings. *Id.*

■ On the other hand, a specific refusal by Congress to act, because it deems regulation inappropriate, is sufficient to trigger "negative preemption". In *Norfolk & Western Ry. v. Public Utilities Com'n*, 926 F.2d 567 (6th Cir.1991), the Sixth Circuit Court of Appeals confronted just such a situation. Applying contingent preemption analysis, the court cited a published Federal Railroad Administration statement detailing that body's reasoning in deciding no regulation was appropriate regarding walkways on railroad trestles. Any such regulation enacted by states was therefore negatively preempted. *Norfolk & Western*, 926 F.2d at 570–71.

This so-called "contingent preemption" analysis has found many more adherents than its all-or-nothing alternative. Many courts espousing this view have issued persuasive opinions on the subject, and some have even modified the original doctrine to suit special situations. The case of *Missouri Pacific R. Co. v. Railroad Commission of Texas*, 833 F.2d 570 (5th Cir.1987), is seminal to a line of cases modifying contingent preemption doctrine. In *Missouri Pacific*, the Fifth Circuit found the designated Federal policy maker must specifically act or refuse to act on the subject of railroad walkways before Federal preemption applies. *Id.* at 576. In so holding, the court stated a mere failure to act was insufficient to preempt state and common law. *Id.* at 575.

Many states have also adopted the contingent preemption approach announced in *Marshall*. Among them, Ohio stands out with several well-reasoned and informative opinions on the subject. (See e.g., *Case v. Norfolk & Western Ry. Co.*, No. S–90–24, 1991 WL 253799); (Ohio App. Oct. 18, 1991); *Barger v. Chesapeake & Ohio Ry. Co.*, 70 Ohio App.3d 307, 590 N.E.2d 1369 (Ohio App.1990).

We believe summary judgment to be a rather drastic remedy and, as a general rule, we find it somewhat repugnant to deny a party his day in court; however, we also feel that rejection of Federal preemption in this area of the law avoids the clear reality of the situation. Congress, through FRSA § 434, has made its intent to preempt quite plain, resulting in the elimination of the "variety of enforcement [of safety regulations] in fifty different judicial and administrative systems." H.R.Rep. No. 1194, 91st Cong. 2nd Sess. 11, reprinted in 1970 U.S.Code Cong. & Admin.News 4104, 4109. Also, 45 U.S.C. § 433 pinpoints grade crossings as an area of special concern to the legislators. As it is not the place of this or any court to debate the wisdom of Congress, we must hold that Federal law has indeed preempted the area of grade crossing safety.

■ Of the two possible approaches to the preemption issue noted above, we find the contingent preemption rule of *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1154 (9th Cir.1983) to be the most persuasive. Since Congress has chosen to act in a piecemeal, crossing-by-crossing fashion, rather than issuing a blanket rule, it can only preempt State and common law doctrine in the same case-by-case manner. Applying the above reasoning to the case at bar, the record reveals that officials from both the Missouri Division of Transportation and Cape Girardeau County, as well as railroad officials, physically went to Randall's crossing to conduct a safety survey of the grade crossing. In its brief, respondent contends that "the Missouri Division of Transportation ... and the Missouri Highway and Transportation Commission had determined that no other warn-

ing devices would be installed at the grade crossing in addition to the existing railroad crossbucks. This decision followed MDOT's survey and inspection of the crossing pursuant to the federal railroad scheme enacted by the United States Congress and Secretary of Transportation." The regulatory scheme enacted by Congress is quite clear. Once the local authorities, here the Missouri Division of Transportation, have made their decision regarding required crossing protection, all further common-law duty for the railroad to maintain a safe crossing is preempted. *Marshall*, 720 F.2d at 1154. Therefore, appellants' issues (a) and (b) are preempted by federal law and fail to state a cause of action upon which relief can be granted.

 Appellants' issues (c) and (f) allege that respondent failed to properly and adequately maintain the grade crossing. To support this assertion, appellants claim the railroad crossing sign, or crossbuck, was rusted and deteriorated, and the crossing itself was filed with ruts and potholes.

The purpose of a crossbuck sign is to warn traffic of a railroad crossing. In the case before us, there can be no doubt that the decedent knew of the crossing and was adequately warned of its existence. At the time of decedent's approach, a train was moving along the siding track. Under Missouri law, the presence of a train on a track is normally sufficient warning of a crossing. *Rowe v. Henwood*, 207 S.W.2d 829, 833 (Mo.App., St.L.Ct.App.1948). In the face of this precedent, appellants' assertion that the crossbuck was rusted becomes utterly meaningless. The purpose of the crossbuck was served by the train on the siding track. The trial court properly granted summary judgment regarding maintenance of the crossing warning signs.

Regarding appellants' claim of potholes in the roadway at the crossing, we find once again that another facet of the record renders appellants' contention irrelevant. The only reason potholes might become important is if they impeded movement of the decedent's car in some way, making his escape more difficult or impossible. Such a situation is clearly not the case here. The

record is quite clear that decedent moved his car back and forth about ten to twenty feet several times when he first arrived at the crossing. This action shows that the potholes, if any truly existed, did not impede mobility of the decedent's car. Therefore, the trial court's grant of summary judgment on this point was proper.

 Similar to respondent's duty to maintain a safe crossing, appellants' issue (d) (train speed) is the subject of extensive federal regulation. 49 CFR 213.9 (1991). Because this issue is preempted by federal regulation, respondent is under no duty to moderate the speed of its trains beyond that speed allowed in the regulations. Moreover, the old common law duty to moderate train speed only arose at an extra- or ultra-hazardous crossing, a determination which is likewise preempted. Appellants cannot assert a cause of action on this point.

 Lastly, appellants' issue (e) asserts that the crossing was "too narrow." We fail to see how the width of a grade crossing could affect any sort of safety concern, and appellants have given us no guidance as to how this purported condition could have contributed to the accident which killed the decedent. Even if the crossing were narrow, as the appellants now claim, this fact, if true, would not entitle appellants to recover. Moreover, even if any perceived narrowness of the grade crossing were a safety concern, it would be preempted by federal law and no issue of fact would remain. The trial court's grant of summary judgment on this issue was therefore correctly entered.

Affirmed.