Richard **LEATHERS** and Mary
K. Leathers, Appellants,

v.

**MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION, Re-
spondent.**

No. WD 53242.

Missouri Court of Appeals,
Western District.

Dec. 9, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 27, 1998.

Application to Transfer Denied
March 24, 1998.

William H. Pickett, David T. Greis, Kansas City, for appellants.

William D. Farrar, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

ELLIS, Judge.

On July 25, 1987, an eastbound train struck Richard L. Leathers' truck as he drove south over a railroad crossing located at the intersection of the Norfolk and Western Railroad and a road leading to Hager's Liberty Bend Auto Parts, Inc., a salvage yard. The railroad crossing was just east of two bridges forming the overpass of Missouri 291 Highway ("M–291") over the Norfolk and Western railroad tracks. On December 1, 1993, Leathers and his wife[1] filed suit in the Circuit Court of Clay County against the Missouri Highway and Transportation Commission ("MHTC"), which had designed the bridges and the railroad crossing, alleging that the highway bridges were a dangerous condition which obstructed the view of both car and train operators and that the dangerous condition caused the collision at the railroad crossing.[2]

On November 6, 1995, MHTC filed a Motion for Summary Judgment which was subsequently amended on February 29, 1996. In its amended motion, MHTC claimed it was entitled to judgment as a matter of law because: (1) it had sufficiently established the "state of the art" defense,[3] (2) appellants could not prove direct causation, and (3) the Public Service Commission ("PSC") had exclusive jurisdiction over the placement and

design of railroad crossings. On July 17, 1996, following a hearing on the matter, the trial court granted MHTC's Amended Motion for Summary Judgment without issuing Findings of Fact and Conclusions of Law.[4] Appellants challenge that ruling on appeal.

Our review of the propriety of a summary judgment is essentially *de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). If the judgment of the trial court is sustainable under any theory, the judgment will be affirmed. *McKim v. Sears Rodeo Ass'n, Inc.*, 789 S.W.2d 217, 219 (Mo.App. W.D.1990). In reviewing the trial court's ruling, we must view the record in the light most favorable to the party against whom judgment was entered and afford that party all reasonable inferences that may be drawn from the evidence. *Williams v. City of Independence*, 931 S.W.2d 894, 895 (Mo.App. W.D.1996). A summary judgment will be affirmed if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Id.*

■ Appellants contend that they have established MHTC's liability under § 537.600.1(2)[5] and that no exceptions beyond the state of the art defense are provided for by that statute. Section 537.600.1 sets forth those instances in which sovereign immunity is waived by the State. § 537.600.1. That section does not create a cause of action but merely provides a remedy for causes of action already existing for which redress could not be had because of sovereign immunity. *Benton v. City of Rolla*, 872 S.W.2d 882, 886 (Mo.App. S.D.1994) (citing *Wilkes v.*

---

1. Mrs. Leathers claimed damages from a loss of consortium.

2. Appellants petition also asserted a claim against Hager's Liberty Bend Auto Parts, Inc., which was voluntarily dismissed with prejudice on March 4, 1996.

3. Section 537.600.1(2), RSMo 1994 provides, *inter alia*, that where "a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recov-

ery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed."

4. From the record, it is apparent that the trial court rested it ruling on MHTC's argument that the PSC had exclusive jurisdiction over the placement of both the railroad crossing and the bridges.

5. All statutory references are to RSMo 1994 unless otherwise noted.

*Missouri Highway and Transportation Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988)). A waiver of sovereign immunity does not act to bar a governmental entity from raising other defenses available to it under statute or the common law. *See Claxton v. City of Rolla,* 900 S.W.2d 635, 636 (Mo.App. S.D. 1995); *McGuckin v. City of St. Louis,* 910 S.W.2d 842, 844–45 (Mo.App. E.D.1995).

> In stating a claim against a governmental entity, immunity is waived pursuant to § 537.600.2, RSMo, if the plaintiff alleges: (1) that the property was in a dangerous condition; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury the plaintiff incurred; and (4) that a public employee negligently or wrongly created the condition within the course of his or her employment, or that the public entity had actual or constructive notice of the dangerous condition.

*Martin v. City of Washington,* 848 S.W.2d 487, 490–91 (Mo. banc 1993).

Both Appellants and MHTC focus on the issue of whether the PSC approval of the projects acts to shield MHTC from liability. Prior to 1969, M–291 had a single bridge over the railroad tracks, and the railroad crossing to enter the salvage yard was located just to the west of the bridge. In the late 1960s, MHTC determined that two bridges would be necessary to handle the traffic flow on M–291. The piers and the spill fill of the proposed bridges would block the road that went under the bridge to the existing railroad crossing, therefore, the MHTC proposed that the crossing be moved to its present location on the east side of the then existing highway in order to allow for the construction of the bridges. On June 5, 1969, the MHTC applied to the PSC for approval of its plan. A hearing on MHTC's application was held on September 15, 1969. On November 4, 1969, the PSC issued a report and order approving MHTC's plans for the bridges and the new crossing, desig-

nating the specific sites for the bridges and crossing, and distributing the costs between MHTC and Norfolk & Western.

■ Protecting the public at intersections of railroads and streets or roads is a proper exercise of police power, and pursuant to that power, the legislature, under § 389.640, conferred upon the PSC the exclusive right to determine whether to permit such intersections and, if authorized, to specify where, when, and in what manner the intersection should be constructed. *State ex rel. Kansas City v. Public Serv. Comm'n,* 524 S.W.2d 855, 859 (Mo. banc 1975). From 1913 through 1985, the Public Service Commission had exclusive jurisdiction over the establishment, installation, operation, maintenance and apportionment of expense and protection of such crossings. *Throckmorton v. Wabash R.R.,* 409 S.W.2d 260, 262–63 (Mo.App. W.D. 1966) (citing *Liddle v. Thompson,* 236 Mo. App. 1071, 162 S.W.2d 614, 621 (1942)).[6]

At the time the PSC's report relating to the bridges and crossing was issued, Section 389.640.1 stated that no public road, highway or street could be constructed across the track of any railroad corporation at grade without having first secured the permission of the PSC. § 389.640.1, RSMo 1969. Section 389.640.2 further provided that the PSC had the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses, use and protection of each crossing of a public road or highway by a railroad, and to alter or abolish any such crossing, at grade or otherwise, whenever the PSC found that public convenience and necessity will not be adversely affected and public safety would be promoted by altering or abolishing such crossing. § 389.640.2, RSMo 1969.

The legislature has determined that public safety interests are better served by allowing the PSC to assume jurisdiction over railroad crossings in an effort to avoid injury to the

---

6. By the adoption of § 622.015, RSMo 1986, the legislature transferred all powers, duties, and functions relating to transportation activity within the State from the PSC to the Division of

Transportation of the Department of Economic Development. *Coon v. Atchison, Topeka & Santa Fe,* 826 S.W.2d 66, 69 (Mo.App. W.D.1992).

public before it occurs. *Coon v. Atchison, Topeka & Santa Fe,* 826 S.W.2d 66, 70 (Mo. App. W.D.1992). In *Coon,* the PSC issued a report and order in 1969 finding that due to the volume of railroad and vehicular traffic at the Illinois/Cherokee crossing, safety upgrades to that crossing were required for the public safety. To that end, the PSC ordered and authorized the installation of automatic flashing light signals with electric bells. The PSC order further retained "jurisdiction of this matter for all orders necessary to carry out the provisions of its Report and Order." In 1984, the PSC authorized the installation of larger signal heads at the crossing. In 1987, Coon's car was struck while traveling through the crossing. Coon filed suit against the Burlington Northern Railroad Company alleging that the protection at the crossing was inadequate. The trial court granted summary judgment to Burlington Northern on the grounds that the PSC had exclusive jurisdiction over the crossing protection at the Illinois/Cherokee crossing.

On appeal, Coon argued that the Illinois/Cherokee crossing was a private crossing over which the PSC had no jurisdiction. This court found that the PSC had assumed control over the warning system at the Illinois/Cherokee crossing and that the plaintiff could not challenge its jurisdiction over the crossing in a collateral proceeding. *Id.* This court further held:

> Once the Public Service Commission (Division) assumes jurisdiction and enters an order with respect to the necessary protection required at a particular crossing, the railroad has no further common law obligation in regard to what constitutes necessary crossing protection at the particular crossing.... The legislature has determined that public safety interests are better served by allowing the Public Service Commission (Division) to assume jurisdiction over railroad crossings in an effort to

avoid injury to the public before it occurs. By so doing, the legislature has preempted the ability of the railroads to determine necessary crossing protection when the Public Service Commission (Division) assumes jurisdiction over a given crossing and makes a determination directing the necessary crossing protection.

*Id.* at 70.

■ Through the enactment of § 389.640, the legislature has preempted the ability of the MHTC or railroad companies to determine necessary crossing protection when the PSC assumes jurisdiction over a given crossing and issues a directive to that effect.[7] *Id.* Accordingly, once the PSC has assumed jurisdiction and issued a directive relating to a given crossing, the parties constructing or maintaining the crossing cannot be held negligent for failing to deviate from the PSC's directive. *Id.*

■ MHTC submitted its plans for the design and location of both the bridges and the crossing to the PSC for its approval. Included in its application were diagrams of the proposed bridges and road plans detailing the proposed location of the bridges and the crossing. The PSC held a hearing on whether to grant that approval and subsequently issued an order approving MHTC's plans and specifically designating the location of the crossing and the bridges. The PSC thereby assumed jurisdiction over the location and design of the crossing and the bridges, and MHTC cannot be held liable for failing to deviate from the PSC's order. *Coon,* 826 S.W.2d at 70.

Appellants claim that the PSC merely rubber-stamped the plans of the MHTC. Even were it appropriate to allow Appellants to challenge the order of the PSC in this collateral action,[8] the record is insufficient to sup-

---

7. *See also Walker v. St. Louis–Southwestern Ry.,* 835 S.W.2d 469 (Mo.App. E.D.1992) (holding claims that a railroad crossing was extrahazardous, that warning devices were inadequate, and that the train was not operating at a speed commensurate with the hazardous nature of the crossing were all preempted by federal law).

8. *See* § 386.550, RSMo 1986 ("In all collateral actions or proceedings the orders and decisions of the commission which have become final shall be conclusive."); *Coon v. Atchison, Topeka & Santa Fe,* 826 S.W.2d 66, 69–70 (Mo.App. W.D. 1992) (where the PSC had exercised jurisdiction over a crossing and issued orders relating to it, a plaintiff in a later tort action against the railroad could not challenge the PSC's jurisdiction).

port that claim.[9]

Appellants further contend, without any supporting citation or evidence, that the PSC does not engage in the consideration of the safety of any particular design choice. In making its decision on the manner of crossing, including where to fix the particular point of crossing, the PSC was bound primarily to consider the public safety. *State ex rel. Kansas City Terminal Ry. Co. v. Public Serv. Comm'n*, 308 Mo. 359, 272 S.W. 957, 960 (1925). The Commission places the consideration of public safety above that of public convenience. *State ex rel. City of St. Joseph v. Public Serv. Comm'n*, 713 S.W.2d 593, 597 (Mo.App. W.D.1986). We must assume the PSC adequately considered the safety implications of the proposed plans prior to issuing its order.

The judgment is affirmed.

All concur.

**9.** This court has no way to determine what actions were taken by the PSC with regard to

MHTC's application aside from an incomplete transcript of the hearing on the issue.